413 So.2d 1362 (1982)
Billy D. ISHEE and Gayle R. Ishee
v.
STATE of Louisiana, Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
James E. HENDERSON and Motorist Insurance Corporation
v.
STATE of Louisiana, Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
Nos. 14712, 14713.
Court of Appeal of Louisiana, First Circuit.
May 4, 1982.
*1363 Sumpter B. Davis, III, Baton Rouge, for plaintiffs-appellees Billy D. Ishee, Gayle R. Ishee, James Henderson and Motorists Ins. Corp.
John R. Keogh, Baton Rouge, for third party defendant-appellant City of Zachary.
Robert L. Oliver, Baton Rouge, for defendant-appellant State of La.
Before LEAR, CARTER and CHIASSON, JJ.
*1364 CARTER, Judge.
These two consolidated cases arise out of single vehicular accidents on La. Highway 19, within the city limits of Zachary, Louisiana. In each case, the plaintiff-driver inadvertently drove off of the highway onto the shoulder, lost control of the vehicle, and thereafter sustained the losses complained of. In each case, suit was filed against the State of Louisiana, Department of Transportation and Development,[1] and in each case, the Department filed a third party petition against the City of Zachary, contending that the City of Zachary agreed to indemnify the State for such liability that the State may have incurred.
After trial on the merits, judgment was rendered in favor of the plaintiffs in each case and against the defendant, the Department.
The trial court further rendered judgment in favor of the third party plaintiff, the Department, and against the third party defendant, City of Zachary, for all sums which the Department was cast in the main demand.
From each of these judgments, the Department and the City of Zachary have perfected appeals.
Although these cases present similar factual situations and some of the legal issues are identical, for purposes of clarity, each will, in part, be treated separately.

HENDERSON CASE
On December 2, 1978, at approximately 8:10 a. m., Henderson was driving a 1979 Oldsmobile in a northerly direction on La. Highway 19 within the city limits of Zachary, Louisiana at about 52 or 53 mph. (the posted speed limit being 55 mph.). Louisiana Highway 19 is a hard-surfaced two lane State highway, one lane for northbound traffic and one lane for southbound traffic. The weather was clear, (although it had rained sometime before the accident), and the roadway in the proximate area of the accident was dry. Henderson inadvertently drove off of the hard surface of La. 19 and his right wheels went into a rut which was parallel to the hard surface. He apparently sustained a deflated right front tire, lost control of the vehicle, re-entered the hard surface going across the highway in a westerly direction, and ultimately flipped the vehicle. It is not controverted that this entire area of La. 19 was bordered by shoulders with an approximate three inch drop from the pavement to the shoulder. In addition to the three inch drop-off, there were ruts roughly eight or nine inches deep in the shoulder, making a total drop-off of approximately eleven inches. Although Henderson's testimony is somewhat contradictory, the trial court resolved the testimony in his favor and found as a fact that he did not know of any dangerous defects on the shoulder prior to the accident. The trial court further found that Henderson did not attempt to travel the shoulder for an extended period of time, but, in fact, sought to re-enter the highway almost immediately. Relying upon Rue v. State Department of Highways, 372 So.2d 1197 (La. 1979), the trial court found that the Department was liable under La.Civ.Code art. 2317 and awarded Henderson $200.00 for his deductible under his insurance policy with Motorist Insurance Company, and awarded Motorist Insurance Corporation the sum of $2,069.90 for the property damage sustained by Henderson and paid to him under his insurance policy with Motorist Insurance Corporation. The trial court further awarded Henderson the sum of $250.00 for the loss of use of his vehicle. The trial court further granted judgment to the Department against the City of Zachary on its third party demand pursuant to a contract between the aforesaid parties. This element of the case will be discussed in detail in a subsequent portion of this opinion.

ISHEE CASE
On or about November 29, 1978, at approximately 5:30 or 6:00 p. m., Ms. Ishee, *1365 was operating a 1978 Ford Van owned by Ms. Ishee and her husband, (also a plaintiff), on La. Highway 19 within the city limits of Zachary, Louisiana. Louisiana 19 is a hard-surfaced two lane State highway, one lane for northbound and one lane for southbound traffic. It had previously been raining, but at the time of the accident the weather conditions were described as "misty" and the roadway was wet. Ms. Ishee was proceeding in a southerly direction at about 45 or 50 mph. (the posted speed limit being 55 mph.) when she inadvertently left the main portion of La. 19, went onto the shoulder, and hit a rut or pothole full of water, splashing water upon the windshield. She attempted to put on the brakes and pull the vehicle to the left to regain entry upon the hard surface. Apparently she lost control of the vehicle, veered back to the right, traveled across the shoulder and across the right of way into some trees. The uncontradicted testimony shows that Ms. Ishee did not frequently travel this portion of La. 19, and although she had seen potholes on the shoulder, she was not aware of any defective condition of the highway or shoulder in this area. The trial court found as a matter of fact, that Ms. Ishee did not know of any dangerous defects on the shoulder prior to the accident. La. 19, in the area of the Ishee accident, is virtually identical to the area of the Henderson accident. There was a two to three inch drop-off between the shoulder and the pavement. Although the record does not reveal the estimated depths of the ruts at the location of the Ishee accident, the investigating officer testified that there were "deep ruts" beside the road at the edge of the blacktop where the shoulder started, and running parallel with the blacktop. Again, it is clear that Ms. Ishee did not attempt to travel the shoulder for any length of time, but immediately sought to re-enter the main travel portion of La. 19 when she lost control and the accident happened. Again, relying upon Rue, supra, the trial court awarded Ms. Ishee the sum of $44.13 for medical bills that were stipulated to and further awarded to Billy D. Ishee, husband of Ms. Ishee, three items of property damage, namely, the amount of an estimate of repairs from Nelson & East Ford Co., Inc. in the amount of $2,210.49, an estimate of refinishing and replacing a customized paint job on the van in the amount of $1,415.00 from Sunshine Wheels, Inc., and the cost of replacing a tire that was "ruined" in the accident in the amount of $121.98. The trial court awarded Ms. Ishee the sum of $2800.00 as general damages for personal injuries sustained in the accident. Additionally, judgment was rendered in favor of the Department on its third party demand against the City of Zachary.

NEGLIGENCE OF THE STATE
It has been repeatedly stated that the State is not a guarantor of the safety of travelers, but rather owes a duty to keep the highways and shoulders reasonably safe for non-negligent motorists. Liability based upon negligence is imposed when the State is actually or constructively aware of a hazardous condition and fails to take corrective action within a reasonable time.
Since road shoulders are only designed for temporary use when a motorist finds himself off the highway, the Department's duty of care is generally discharged at a level of construction and maintenance less than that required for primary road service. However, an implicit necessity for the functional use of the shoulder is a connection between the roadway and shoulder that allows for safe gradual movement from one to the other.[2]
The duty to maintain reasonably safe highways and shoulders extends to the protection of those people who may be foreseeably placed in danger by an unreasonably dangerous condition. It is now certain that this duty extends to the protection of those persons who drive onto the shoulder inadvertently.[3]
*1366 A review of the trial record leads this court to the conclusion that the lower court was correct in its findings that the Department breached its duty to plaintiffs and was indeed negligent in failing to maintain a safe road shoulder in the instant case. A three inch drop-off from the paved portion to the shoulder, coupled with deep ruts immediately on the edge of the blacktop and at commencement of the shoulder, is clearly dangerous to the driving public and negligent. The Department knew, or should have known, of the condition, and the Department should have expediently corrected the situation prior to the accident.
The scope of the State's duty included protection of these plaintiffs from the risk they encountered. For the foregoing reasons, the State clearly breached that duty.
Negligence is only actionable where it is both a cause in-fact of the injury and a legal cause of the injury. Legal cause requires a proximate relation between the actions of a defendant and the harm which occurs, and such relation must be substantial in character. Dixie Drive It Yourself System v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962); Lombard v. Sewerage and Water Board of New Orleans, 284 So.2d 905 (La.1973). Using a "but for" test to determine cause-in-fact clearly results in a finding that the accidents would not have resulted had the road shoulder not been in a dangerous condition (having an approximately eleven (11) inch drop-off). Further, there is a substantial relationship between the failure to correct the defects and the vehicular accidents.

CONTRIBUTORY NEGLIGENCE
In Rue v. State Department of Highways, supra, the Supreme Court stated:
"Under a simple `but-for' analysis, the accident would not have occurred had either the Highway Department not been negligent in failing to maintain the shoulder or the plaintiff not been negligent (and for present purposes we assume her inadvertent meandering was negligence) in moving the vehicle onto the shoulder.3 But this does not conclude the inquiry. Focusing on plaintiff's `substandard' conduct the question is whether the risk of injury from striking an unexpected, negligently maintained highway shoulder was a risk reasonably related to plaintiff's failure to drive entirely on the paved portion of the highway. We conclude that it was not. A motorist has a right to assume that a highway shoulder, the function of which is to accommodate motor vehicles intentionally or unintentionally driven thereon, is maintained in a reasonably safe condition. Conversely the Highway Department's duty to maintain a safe shoulder encompasses the foreseeable risk that for any number of reasons, including simple inadvertence, a motorist might find himself travelling on, or partially on, the shoulder.
We conclude that plaintiff's conduct if indeed it was substandard is no bar to her recovery of damages occasioned chiefly because the Highway Department negligently failed to maintain a safe highway shoulder. We therefore expressly overrule Hopkins v. Department of Highways, [167 So.2d 441] supra."
(Footnote omitted)
The factual situations presented in the two instant cases are almost identical to the factual situation presented in Rue, supra, and are clearly distinguishable from the factual situation presented in Sinitiere, supra.
In Sinitiere, the party leaving the main travel portion of the highway inadvertently allowed his two right wheels to ease onto the shoulder of the road at a place where the shoulder and highway were even.
Knowing that his vehicle was partially on the shelled shoulder, he slowed the vehicle to about 35 or 40 mph. for the planned re-entry onto the travel portion of the road. At the point where the party attempted to maneuver the vehicle back onto the highway, there was a three and one-half to four inch drop from the travel portion of the highway to the shoulder. Contact between the vehicle's wheels and the elevated edge of the roadway resulted in the driver losing *1367 control of the vehicle and careening across the center line of the highway into the oncoming traffic. Although the driver testified he had no actual knowledge of the low condition of the shoulder, it was established that where the driver left the travel portion of the roadway, there was only a slight depression, if any, on the shoulder. However, after traveling on the shoulder for a considerable distance, and approximately 100 feet before the point at which the driver attempted to re-enter the travel portion of the roadway, the shoulder began descending, while the roadway continued along its even plane. Depression of the shoulder continued past the point at which the driver attempted to re-enter the roadway and gradually went as low as five inches below the travel portion of the highway. Thus, the driver moved from a place on the roadway where his vehicle was substantially level with the plane of the road, to a position where the right side of his vehicle was three and a half to four inches lower than the left side. The angle of the vehicle caused by this condition, coupled with the presence of a continuing depression along the roadway in front of the vehicle, led the Supreme Court to the conclusion that the driver should have known that something was seriously wrong before he attempted to jump a three and one-half to four inch curb while going 35 to 40 mph. Having found the above factual situation, the court in Sinitiere, supra, stated that the driver's actions were more than just a cause-in-fact of the accident, and that his breach of duty to observe what he should have seen had a substantial relation to the harm encountered by himself and others. He was precluded from recovering from the department and held liable to the survivors of the parties in the vehicle that he hit.
Each of the plaintiffs in the instant cases inadvertently drove their vehicles onto the shoulder. In these cases, (different from Sinitiere), there was a deep drop-off at the edge of the pavement and at the commencement of the shoulder (found by the trial judge to be unknown to the plaintiffs) which caused the plaintiffs to immediately lose control of their vehicles.
We conclude, as the court did in Rue, that each plaintiff's conduct, if indeed substandard, is no bar to recovery of damages occasioned chiefly because the Highway Department negligently failed to maintain a safe highway shoulder. A motorist has a right to assume that a highway shoulder, the function of which is to accommodate motor vehicles intentionally or unintentionally driven thereon is maintained in a reasonably safe condition.

DAMAGES
Appellants do not contest the award of damages to Henderson, but strenuously contend that the award of $1,415.00 to Mr. Ishee for a custom paint job does not correlate to any loss that appellee suffered. There is ample evidence in the record that the appellee had previously had the van custom painted and that it would have required $1,415.00 to duplicate the paint job. Appellants contend that since the automobile was repossessed from the appellee and the custom paint job was not performed, that the repossessing finance company may have suffered a loss, but appellee-Ishee certainly had not. Certainly, there is no requirement that a successful plaintiff actually make repairs to a damaged vehicle as a prerequisite to recovery for damages to the vehicle. An award granted is compensation for the loss sustained. It is clear that the Ishees were damaged by destruction of the paint job in this accident, and this loss must be compensated by the appellant. It is immaterial what disposition the Ishees might have made with the van, whether by sale, repossession, etc. It is defendant's duty to compensate for the damages and loss sustained.
Additionally, appellants object to the award of special damages of $128.98 for the replacement of the tire. It is clear from the record that a tire was damaged in the accident, and even though not brought out on direct examination, this was established on redirect examination. The trial court stated that this item of damage had been clearly discussed in a pre-trial meeting *1368 and all parties were aware of this claim. We find this contention of appellants is without merit.
Appellants next contend that the award of $2,800.00 as general damages for the injuries sustained by Ms. Ishee was excessive. Ms. Ishee suffered a lumbarsacral sprain or strain, a partial tear of the Achilles tendon of her left leg, and a large bump on her leg. These injuries caused pain for several weeks. The leg injury caused pain for several months. On the date of trial, Ms. Ishee continued to have a large bump on her left ankle. Immediately after the accident, she received emergency medical attention at Lane Memorial Hospital. She thereafter consulted Dr. Fontenot for pain in her back and her leg and for ankle injuries. Dr. Fontenot referred Ms. Ishee to an orthopedic surgeon, Dr. Loupe. Dr. Loupe examined her on February 9, 1979, (some two months post injury) and found a mass in the left Achilles area that was causing pain and discomfort. He found a partial tear of the Achilles tendon and calcification. Dr. Loupe estimated that it would take six months to one year to complete healing. The trial judge found that even though Ms. Ishee continued to perform her duties as a housewife and mother, she did experience some injury and pain in her left leg.
Considering all of the above and the settled law that an award of a trial judge for general damages will not be disturbed unless manifestly erroneous, we can not say the general damages awarded in this case are excessive.

LIABILITY AS BETWEEN DEFENDANTS
At the time of the accidents and injuries herein complained of, there was in existence a contract between the City of Zachary and the Department which provided in pertinent part as follows:
"ARTICLE IV. The municipality shall cut or otherwise control weeds, grass, trees, and other vegetation, flush and clean drainage facilities, maintain and operate traffic signals, clean and grade ditches, sweep and clean the roads and streets, patch, blade, replace material and otherwise, maintain shoulders and shall generally police and maintain all facilities within the designated, dedicated or apparent right of way not otherwise provided for herein, and shall not permit encroachments on the right of way of said roads and streets.[4]
ARTICLE IX, It is understood and agreed that the municipality shall hold Office harmless for any claims for damages to person or property arising by reasons of any negligence attributed to failure of proper maintenance of any of the facilities assumed by said municipality and likewise, Office shall hold said municipality harmless of any and all such claims arising by reason of its undertaking herein."
Counsel for third party defendant and appellant, City of Zachary, contends that if there is liability on the party of any defendant, it should only be against the Department. He contends that since there had always been a drop-off between the travel portion of La. 19 and the shoulder of approximately two to three inches in depth, that this defect in original construction by the State was the sole cause of each accident. He further contends that Ms. Ishee's accident was the result of hitting a bump or defect in the travel portion of the roadway, then running inadvertently onto the shoulder, and that maintenance of the travel portion of La. 19 is not the responsibility of the City of Zachary. Counsel argues that the ruts and/or washed-out conditions were not the problems in these cases, but that, in fact, the real problem was the design and construction of the main travel portion and the two to three inch drop-off of the shoulder. Finally, it is argued that no liability should attach under the provisions of La. Civ.Code art. 2317 and that the City of Zachary did not agree to custodial liability or strict liability, or any other liability except that of negligence under La.Civ.Code *1369 art. 2315. All of these arguments are without merit.
It is abundantly clear from the entire record that the hazardous condition of the shoulder and more particularly the eight or nine inch drop-off and/or "deep ruts" were the cause-in-fact of this accident. It was not established that the designed drop-off of two to three inches from the travel portion to the shoulder caused the problems in the instant case.
Appellant, City of Zachary, contends that under the terms of the contract, it is only obligated to hold harmless the Department from acts of negligence by the City, and that it did not agree to take on the underwriting burden of La.Civ.Code art. 2317. This argument has previously been disposed of in Robertson v. Handy, 354 So.2d 626, (La.App. 1st Cir. 1977). In that case, this court was presented with a factual situation very similar to the instant ones concerning contractual liability. Quoting R.S. 48:193(a), it was held that if the State was liable, then necessarily the City must be liable on the third party demand against it under the hold harmless agreement contained in the maintenance contract.
La.R.S. 48:193(a) provides, in part:
"A. The board of highways is hereby directed to repair and to keep in operating condition at its sole cost and expense, all municipal roads or streets which form a continuation of one of said highways, provided however, the final decision as to the designation or location of the particular municipal road or streets to be placed in the state systems shall be left entirely up to the board of highways. At the request of the governing authority of a municipality the work may be contracted out to such municipality, but all such maintenance costs shall be paid for by the state, provided that the state shall not be responsible for the maintenance of sewers, street lighting, gas and water mains and other public utilities. All damages to the streets or highways occasioned by the laying of sewers, street lighting and other public utilities shall be paid by the owner thereof. The board of highways shall control the parking on any highway which is hereafter constructed, widened or relocated at the sole expense of the state. The board of highways shall control signal lights and traffic other than parking on highways in the state system established hereby...."
The trial court found, and we agree, "... that the ruts that both plaintiffs hit were the responsibility of the City of Zachary under the contract between the municipality and the State." Although the City of Zachary contends that this might be true if they were negligent in not maintaining the shoulder, they argue that they did not agree to assume liability under La.Civ.Code art. 2317. However, paragraph IV of the contract clearly provides, "It is understood and agreed that a municipality shall hold Office (State of Louisiana) harmless for any and all claims for damages to person or property arising by reason of any negligence attributed to failure of proper maintenance of any facilities assumed by said municipality." Since we have previously held that the ruts constituted a hazardous condition for the traveling public, and since under the contract between the City of Zachary and the Department the maintenance of the shoulder was the responsibility of the City of Zachary, clearly, the City of Zachary was negligent, but even if not negligent, the hold harmless agreement would make the City of Zachary liable to the Department.
For the above and foregoing reasons, the judgment of the trial court is affirmed. The City of Zachary is cast for costs in the amount of $921.55.
AFFIRMED.
NOTES
[1] The Department of Transportation and Development will hereafter be referred to as "Department".
[2] Sinitiere v. Lavergne, 391 So.2d 821 (La. 1980).
[3] Rue v. State Dept. of Highways, supra.
[4] Underlining by the court.