LOTTINGER, Judge.
This is a suit by Charles J. Windecker, Jr., in his representative capacity to recover damages for personal injuries to his minor son, Walter Windecker, and individually for medical and hospital expenses.
On July 23, 1965, prior to the accident, Walter Windecker and his brother, Anthony, were riding in a car driven by Roland Reine, going toward Hammond, Louisiana, on Interstate 55, hereinafter referred to as 1-55. The Reine automobile developed mechanical trouble, and it was necessary to stop the car on the shoulder of the highway. A short time thereafter, a truck driven by Leon Johnson, in which Charles Windecker, III, and Margie Ellen McKinney were riding stopped to render assistance. At this time it was decided to tow the Reine automobile across a grassy area separating 1-55 and a service road. 1-55 runs in a generally northerly and southerly direction, and the service road is to the east of 1-55. The service road is a hard surfaced, two-lane roadway also running in a generally northerly and southerly direction. At the time the towing procedure was taking place, apparently only Reine was in his automobile, to steer it, and only Johnson and Margie Ellen were in the truck.
It is further pointed out that the truck and the Reine automobile were both in the northbound or right-hand lane of travel on the service road, and facing in a northerly direction. The lights on the truck, the vehicle furthest north were on, and both vehicles were on the paved portion of the roadway. After the two vehicles stopped, *888 Johnson, Margie Ellen and Roland Reine got out of their respective vehicles and the rest of the individuals walked across the grassy area from I-S5. There were no street lights on the service road, and the only illumination was from the lights of the truck. The vehicles were in this position, that is, facing north, for anywhere from ten to twenty minutes prior to the accident. During this period of time no other vehicles were seen on the service road. No flares were set out nor was any attempt made to warn oncoming traffic.
The vehicle which struck Walter Win-decker was driven by Daisy Rayborn in a southerly direction at about 45 to 50 miles per hour. Two passengers were riding with Miss Rayborn, and both testified that they were traveling at about 45 to 50 miles per hour. The best explanation of how the accident happened is found in the testimony of Miss Rayborn, to-wit:
“Well, I was driving down the road and we were coming up on a slight hill, and I saw the lights of the car reflecting on the hill and I dimmed my lights and slowed down — well I couldn’t see past the headlights of the vehicle parked in the road, and I did not know it was parked, I thought it was moving slowly, and when I got up to where I could see there was a little boy in the road and I hit my brakes, but I could not stop before I hit him.”
Miss Rayborn was proceeding in a southerly direction, and the evidence indicates that the point of impact was in the southbound lane of travel. One of the passengers riding with Miss Rayborn, and who was sitting next to the passenger door, testified that when he first saw a human being, the human being was 40 to 50 feet away.
The Trial Court - ruled in favor of the defendants and dismissed the suit of plaintiffs, finding that young Windecker was guilty of negligence constituting the proximate cause of the accident, and that there was no negligence on the part of Miss Rayborn.
The Trial Court ruled in favor of the defendant, and the plaintiff has appealed.
Plaintiff contends that the Trial Court erred in finding Walter Windecker guilty of contributory negligence when Walter was only ten years, nine months old. It is further contended that the Trial Court erred in finding no negligence on the part of Daisy Rayborn.
The Trial Judge in his reasons for judgment stated:
“Generally speaking a motorist is negligent when he fails to operate his vehicle at such a speed and with such care that he can stop within the distance of vision projected by his headlights, but there is no hard and fast rule which governs every case in which a motorist collides with a stationary object in the highway, but each case must be determined upon its facts.
“The duty to use reasonable care for the safety of others places the operator of a motor vehicle under a continuing duty to keep a proper lookout for other vehicles which may be properly parked along the road, as required by statute or dictated by prudence. However, although it is the duty of a motorist to have his automobile under such control that he can bring his vehicle to a stop within his range of vision, the standard to be applied in determining whether a motorist is guilty of negligence is the standard to be exercised by a reasonably prudent motorist under the set of facts and circumstances then prevailing, and not that exercised by an imaginary ideal motorist. See Suire v. Winters, [233 La. 585] 97 So.2d 404.
“Generally a motorist may assume that road is safe for traveling even at night. Carona v. Southern Farm Bureau Cas. Co., [La.App.] 164 So.2d 138, writ refused, [246 La. 721] 167 So.2d 302.
*889 “Applying- the law as depicted by the cited jurisprudence to the facts here, the Court finds that the Miss Rayborn was proceeding at a safe and not excessive rate of speed under the circumstances prevailing prior to the accident; that she was confronted with an emergency situation over which she had no control, and performed her driving responsibilities in a manner commensurate with that of a reasonably prudent motorist under prevailing conditions.”
The Trial Judge in his reasons for judgment went further and stated: “Plaintiff’s counsel argues that the simple and reasonable means by which Miss Rayborn could have avoided striking the boy was the immediate turning of her steering wheel to the right, and that this maneuver could have been accomplished just as easily and readily as that involving the application of her brakes which latter act turned out to be fruitless. In retrospect, it may be true that by quickly turning she could have avoided striking Windecker, * * * but Miss Rayborn cannot be held to the same cool and deliberate operation of her vehicle as would obtain in a situation where she was not confronted with a sudden emergency posed by the appearance of Win-decker in her lane of travel only 30 to 40 feet past the truck headlights as was the case here. We hold that Miss Rayborn was reasonable and prudent in the operation of her vehicle.”
We have reviewed all of the facts in this case and agree wholeheartedly with the decision of the Trial Judge as above quoted. Since there was no negligence proven on the part of Miss Rayborn, there is no need to discuss any contributory negligence on the part of Walter Windecker.
Therefore, for the above and foregoing reasons, the judgment of the Trial Court is affirmed. All costs of this appeal are to be paid by plaintiff-appellant.
Judgment affirmed.