476 So.2d 851 (1985)
Donald Jose THISSEL, Plaintiff-Appellee,
v.
COMMERCIAL UNION INSURANCE COMPANY, et al., Defendants-Appellants.
No. 16954-CA.
Court of Appeal of Louisiana, Second Circuit.
September 25, 1985.
Rehearing Denied October 24, 1985.
Writs Denied December 13, 1985.
*852 McLeod, Swearingen, Verlander & Dollar by Richard A. Bailly, Monroe, for Samuel Hicks, Town of Jonesboro & Comm. Union Ins. Co.
Robert T. Talley, Baton Rouge, for Louisiana Dept. of Transp. & Development.
Brittain, Williams & McGlathery by Jack O. Brittain, Natchitoches, for plaintiff-appellee.
Before MARVIN, SEXTON, JASPER E. JONES, LINDSAY and HALL, JJ.
JASPER E. JONES, Judge.
In this action for damages due to personal injuries sustained in an automobile-pedestrian collision the defendants appeal a judgment against them, in solido, in the amount of $400,000.00 and the plaintiff answers the appeal seeking an increase in the award. The plaintiff in this action is Donald Jose Thissel. The defendants are Samuel J. Hicks, the Town of Jonesboro, the State of Louisiana, Department of Transportation and Development, and Commercial Union Insurance Company, the insurer of the town. The judgment limits Commercial Union's liability to $50,000.00, its policy limits. We reverse in part and amend and affirm in part.
The Facts
This action arises out of the following events.
On December 24, 1981, plaintiff arose late in the day and went to a friend's home where he consumed some alcohol. Plaintiff then went to "Ebony's", a bar located on Louisiana Highway 542 in or near the Town of Jonesboro. The plaintiff made these trips and all other trips described herein on foot as he did not own a car.
While passing the evening at Ebony's, plaintiff consumed more alcohol. Plaintiff left the bar at approximately 2:00 a.m. on the morning of December 25, 1981, and began walking home in a westward direction along Highway 542.
Located along plaintiff's route was a short bridge. As he neared the west end of this bridge plaintiff was struck by a Chevrolet Nova driven by Officer Samuel Hicks of the Jonesboro City Police Department who was on patrol.
The only witnesses to the accident were the plaintiff and Hicks. Hicks testified that he was driving easterly at about 30 m.p.h. when he heard a loud impact noise and the passenger side front window of his car broke and a hat fell into the seat. Hicks testified that he never saw Thissel before impact and learned that he had hit a man only after he got out of his car and saw Thissel on the roadway.
Thissel testified that as he was crossing the bridge he saw the Hicks car approaching and he moved to the extreme south edge of the bridge and placed one foot on a timber at the bottom of the guard rail. As the car drew near he looked down to avoid the glare of its lights and was in that position when hit. At the scene, very shortly after the accident, Thissel told the investigating officer that he was about to cross the road when hit.
Thissel brought this action against Hicks, the town and Commercial Union based upon Hicks' negligence. Thissel also made DOTD a defendant asserting liability against it upon negligence and strict liability theories due to its failure to provide a pedestrian walkway on the bridge and improper placing of the highway center line.
After a trial on the merits the district judge rendered written reasons for judgment and made the following findings:
"1. At the time of the accident, plaintiff was intoxicated to such an extent that *853 the intoxication contributed to his being injured.
2. Hicks should have seen the red-orange cap worn by plaintiff, at the time of the accident, and should have taken some action to avoid hitting plaintiff.
3. The State should have provided a walkway along the bridge for pedestrian traffic.
4. Plaintiff's damages total $500,000.00 and are calculated as follows:
A. Estimated loss of future earnings $300,000.00.
B. Estimated past, present and future mental pain and suffering $25,000.00.
C. Estimated past, present and future physical pain and suffering $50,000.00.
D. Estimated past, present and future medical expenses $25,000.00.
E. Permanent disability and scarring $100,000.00." (R.p. 262)
The district judge then applied the doctrine of comparative negligence and found the parties to be at fault in the following percentages:

1. Plaintiff..............20%
2. Hicks, The Town and
 Commercial Union.......40%
3. DOTD...................40%

After judgment was signed all defendants made motions for new trial. The district judge rejected these motions and this appeal followed. Hicks, the town and Commercial Union contend the district judge erred in:
a) Finding that Hicks should have seen Thissel and taken evasive action;
b) Finding Hicks guilty of any fault contributing to the accident;
c) Apportioning fault 40% to Hicks and 20% to Thissel rather than totally to Thissel;
d) In failing to tax costs against the DOTD; and
e) In awarding excessive and duplicate damages.
The DOTD contends the trial judge erred in:
a) Holding it liable; and
b) Awarding grossly excessive damages.
Thissel, through his answer to the appeal, contends:
a) That the trial judge awarded inadequate damages which should be increased to $1,200,000.00; and
b) That he should be determined to be free of any negligence.
This appeal presents the following issues for our consideration:
1. Was Thissel negligent;
2. Was Hicks negligent;
3. Was the DOTD negligent or at fault under the theory of strict liability;
4. What is the correct apportionment of fault among the parties; and
5. Is the award of damages inadequate or excessive.
Issue # 1
We first consider whether Thissel was guilty of any negligence in causing the accident.
Thissel argues first that under the doctrine of Baumgartner v. State Farm Mutual Auto. Ins. Co., 356 So.2d 400 (La. 1978), he cannot be guilty of comparative negligence. The question of whether comparative fault applies in pedestrian-automobile accidents was recently decided in Turner v. New Orleans Public Service, Inc., All So.2d 709 (La.1985). In Turner the supreme court found the Baumgartner rationale of no contributory negligence in pedestrian cases no longer necessary and that pedestrian cases are to be governed by the comparative fault doctrine of LSA-C.C. art. 2323.
The legal question of whether Thissel may be found guilty of comparative fault having been resolved by Turner we turn to the question of whether, under the facts of this case, he was guilty of such fault. The trial judge found that Thissel was guilty of fault and in reviewing this determination we are guided by the rule of Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), on remand, 370 So.2d 1262 (La.App. 3rd Cir.), *854 writ den., 374 So.2d 660 (La.1979), that the trial judge's factual findings are not to be disturbed on appeal unless clearly wrong.
Implicit in the trial judge's finding that Thissel was at fault is his rejection of Thissel's testimony as to how the accident happened. The trial judge found Thissel was guilty of fault because his intoxication contributed to his injury. If Thissel had been standing next to the bridge railing with his foot upon it he would have been in a position of safety about two feet south of the edge of the east bound traffic lane and under these circumstances his intoxication could not be said to have contributed to his injury. The trial judge, who had the opportunity to observe the witnesses, apparently found Thissel's testimony concerning the accident incredible. The trial judge did not believe Thissel's testimony that he was standing by the edge of the bridge with his foot upon the railing at the time he was struck by the police car. The other evidence at trial indicates that the accident occurred as Thissel was crossing the road. The evidence also shows that Thissel's blood alcohol level was .16 when tested approximately two hours after the accident.
The evidence adequately supports the trial judge's finding that Thissel was in the road rather than on the bridge rail when the accident occurred. Officer Reed, who investigated the accident, testified that when he arrived at the scene Thissel told him that he was trying to cross the road and got hit. Officer Reed stated that Thissel did not clearly state that he was actually in the east bound lane of travel at the time he got hit. Officer Reed found part of the right head light and glass from the vehicle's right front window of the Hicks vehicle lying along the white line marking the south edge of the east bound lane and this physical evidence, along with Thissel's statement to Officer Reed, supports the trial judge's finding that Thissel was on the roadway rather than against the bridge railing at the time of the accident. Hicks testified that he was in his proper lane of travel at the time of the accident. There is no manifest error in that finding.
The law also supports the trial judge's finding that Thissel was guilty of negligence which caused the accident. A pedestrian has a duty to keep a proper lookout for approaching traffic. Tinnin v. Donnelly, 311 So.2d 462 (La.App. 4th Cir. 1975).
Here Thissel was walking towards the direction from which the police car approached. He had ample opportunity to observe the car and move to a position of safety. Despite this opportunity he either failed to see the approaching car or to act accordingly and in either case he was guilty of fault which contributed to this unfortunate accident.
There was no error in the trial judge's finding that Thissel was guilty of fault which contributed to the accident.
Issue # 2
The next issue is whether Hicks was negligent in failing to see and avoid Thissel as the trial judge found.
Hicks admittedly never saw Thissel before the accident. The evidence shows that Thissel is a black man who is 6'6" tall and that he was wearing dark clothes except for a red-orange stocking cap. There were no unusual conditions obscuring visibility at the time of the accident. Reed, the investigating officer who arrived upon the scene very shortly after the accident and who approached from the same direction as Hicks, testified that as he topped the hill he observed Thissel lying in the east bound lane with Hicks standing over him near the west end of the bridge. The record establishes that the top of the hill from which Reed made this observation is more than 300 feet from the point where Thissel lay in the roadway. The taillights, but not the backup lights, were illuminated on the Hicks vehicle. Thissel and Hicks were about 20 feet west of the rear of the Hicks parked vehicle and for this reason the taillights on the rear of the Hicks vehicle contributed very little to the ability of Reed to see Hicks and Thissel in his headlights as he topped the hill.
*855 Drivers of automobiles are under a never ceasing duty to maintain a proper lookout and to see what should be seen. Rottman v. Beverly, 183 La. 947, 165 So. 153 (1935); Jackson v. Cook, 189 La. 860, 181 So. 195 (1938); Ponder v. Groendyke Transport, Inc., 454 So.2d 823 (La.App.3d Cir.1984), writs denied, 457 So.2d 1195 and 457 So.2d 1198 (La.1984).
Hicks was familiar with the scene and had patrolled the area on several prior occasions earlier on the evening of the accident. Hicks also knew the area was frequented by pedestrians. He was driving at the relatively slow rate of speed of approximately 30 m.p.h. His vision was unobstructed for over 300 feet as he approached the bridge and he had his headlights on bright.
The trial judge's finding that Hicks should have seen and attempted to avoid Thissel is strongly supported by the evidence. It is not clearly wrong and cannot be changed on appeal. See Arceneaux v. Domingue, supra.
Hicks, the town, and Commercial Union rely heavily on Aetna Cas. and Sur. Co. v. Nero, 425 So.2d 730 (La.1983), in support of their contention that Hicks was not negligent.
In Nero a driver struck an intoxicated pedestrian in an area where the street lights were inoperative and it was so dark the investigating officer could not see the pedestrian upon arrival at the scene. It could not be determined how the pedestrian got into the car's path.
This case differs from Nero in two important respects. First, Thissel was not attired in totally dark clothing; he was wearing a brightly colored cap. Second, visibility was much worse in Nero. The Nero victim could not be seen by the investigating officer but here both Thissel and Hicks were easily seen by the investigating officer as he approached the scene.
In Nero there was evidence which showed good reason why the driver failed to see the pedestrian and this evidence supported the trial court's determination that no negligence was established on the part of the driver. The trial judge there wasn't clearly wrong. Here the evidence shows, as the trial judge found, that Hicks should have seen and avoided Thissel. There is substantial evidence to support the trial judge's finding of negligence on the part of Hicks and this factual determination is not clearly wrong and cannot be disturbed on appeal. We must adhere to the manifest error rule as it is founded upon the very sound reason that the trial judge who sees and hears the witnesses testify is in the best position to determine their credibility and to otherwise evaluate their testimony and make the factual findings.
Issue # 3
We now consider the liability of the DOTD. Thissel contends that the DOTD should be found liable upon both negligence and strict liability theories. The factual basis for plaintiff's claims are the DOTD's failure to provide a pedestrian walkway on this bridge and its improper marking of the centerline which had the effect of "channeling" traffic into the edge of the bridge where pedestrians walked.
The trial judge found that the DOTD should have provided a walkway on this bridge.
At trial plaintiff presented evidence that this bridge was used by a substantial number of pedestrians each day. The plaintiff also presented evidence in the form of expert testimony that an "urban" bridge should have a pedestrian walkway.
We note that our review of the record, particularly the descriptions and photographs of the scene, leave us with grave doubt as to whether this bridge, located outside the limits of the Town of Jonesboro, can be considered an urban bridge. However, we do not decide this issue upon whether the bridge is rural or urban. The record shows that even if the DOTD should have provided a pedestrian walkway it is still not liable to this plaintiff because the absence of the walkway did not cause the accident.
*856 As set out hereinabove the record supports the trial judge's apparent finding that Thissel was crossing the road when the accident occurred. One of the necessary elements of recovery, whether on a theory of strict liability or negligence, is that the fault of the defendant have caused the injury. Everett v. Louisiana Dept. of Transp., etc., 424 So.2d 336 (La.App. 1st cir.1983); Roussel v. Berryhill, 444 So.2d 1286 (La.App. 5th Cir.1984), writ denied, 447 So.2d 1081 (La.1984).
As Thissel was injured while attempting to cross the road and it is apparent that the lack of a pedestrian walkway was not a cause of the accident for the reason that Thissel would not have been using a walkway while crossing the road.
The trial judge was clearly wrong in finding that the lack of a walkway was a cause of the accident and the judgment against the DOTD will be reversed. Issue # 4
The next issue for our consideration is the apportionment of fault between Thissel and Hicks. The trial judge assessed fault 40% to Hicks, 40% to the DOTD, and 20% to Thissel. Because no fault should have been attributed to the DOTD we give no weight to the particular percentages of fault assigned by the trial judge; however, we do give considerable weight to the trial judge's apparent view that Hicks was more at fault than Thissel in causing the accident.
Under the facts of this case and in light of the trial judge's view of the fault between Thissel and Hicks we assess the fault of the parties as Hicks 60% and Thissel 40%.
Issue # 5
The final issue for our review is the trial judge's determination of damages. The defendants attack the award as excessive and the plaintiff attacks the award as inadequate. The trial judge fixed Thissel's damages at $500,000.00.
The trial court's award of general damages will be disturbed on appeal only where the award is a clear abuse of the trier of fact's much discretion. Reck v. Stevens, 373 So.2d 498 (La.1979).
Thissel was twenty years old at the time of the accident. He suffered a broken right leg and severe damage to his right arm and hand which rendered them useless. Thissel was hospitalized for twentytwo days following the accident. Prior to the accident Thissel had a history of sporadic employment.
Under these facts there was no abuse of discretion by the trial court in awarding inadequate damages in fixing Thissel's damages at $500,000.00.
Defendants contend that the damages fixed by the trial court are excessive. They rely on Davis v. New Orleans Public Belt R.R., 375 So.2d 395 (La.App. 4th Cir. 1979), for the proposition that an award of general damages should not include duplications of items.
We have no quarrel with the proposition that general damage awards should not be increased beyond the trier of fact's discretion by duplication of awards for the same element of general damages. However, we will not reduce an award which has been itemized by the trier of fact merely because the different elements of the award have been clearly itemized and distinguished unless the award when viewed as a whole represents an abuse of discretion. To do otherwise would make identical awards to identically situated parties subject to different action upon appellate review merely because one trier of fact attempted to show its calculations for each element of general damages while the other simply lumped all elements together into one award of general damages.
Here the total general damages fixed by the trial judge are well within the range of his discretion and do not constitute an abuse of his discretion by awarding excessive damages.
We do agree, however, with defendants' contention that the amount awarded for medical expenses is excessive. The trial judge awarded a total of $25,000.00 *857 for past, present and future medical expenses.
The record reflects that Thissel incurred a total of $10,940.10 in medical expenses through the trial. There is no evidence, beyond some evidence that Thissel might need a rod removed from his leg, to support an award of future medical expenses. No future medical expenses having been proved the award for medical expenses will be reduced to $10,940.10. This reduction results in the plaintiff's damages being the sum of $485,940.10, which, when reduced by plaintiff's negligence, results in the judgment value of his claim being the sum of $291,564.06.
Conclusion
For the foregoing reasons the judgment of the district court is reversed with respect to defendant State of Louisiana, Department of Transportation and Development, and with respect to the other defendants is amended as recast below:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, Donald Jose Thissel, and against defendants, Samuel J. Hicks, Town of Jonesboro and Commercial Union Insurance Company, in solido, in the sum of Two Hundred Ninety-one Thousand Five Hundred Sixty-Four and 6/100 ($291,564.06) Dollars with legal interest from judicial demand until paid, provided the judgment against Commercial Union Insurance Company is limited to $50,000.00 which is the limits of liability under its policy.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the following expert witness fees be fixed as provided below and taxed as costs:

a) James Clary $1,600.00
b) Dr. Earl Thames 550.00
c) Dr. Craig R. Springmeyer 75.00
d) Dr. James A. Albright 150.00.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all costs in the trial court be taxed against defendants, Samuel J. Hicks, Town of Jonesboro and Commercial Union Insurance Company and that all costs on appeal be taxed against plaintiff, Donald Jose Thissel.[1]
SEXTON, J., dissents and assigns written reasons.
LINDSAY, J., dissents for the reasons assigned by SEXTON, J.
SEXTON, Judge, dissenting.
On this day, this Court has handed down three cases involving pedestrian-automobile collisions. All of these cases involve the driver's failure to see and avoid pedestrians in less than ideal visibility conditions. Because I cannot subscribe to the majority's finding of fault on the part of the driver in this case and the factually similar case of Finley v. North Assurance Company, 476 So.2d 837 I respectfully dissent.
The facts of this case bear a striking similarity to the facts of Aetna Casualty and Surety Company v. Nero, 425 So.2d 730 (La.1983), when plaintiff's intoxication and position in the roadway are considered. In that case, defendant-motorist struck and killed plaintiff's decedent on a four-lane undivided street in Baton Rouge at eight o'clock on a dark, clear, January night. The pedestrian, a black man, wore dark clothing and was intoxicated. He was not in a crosswalk. Ms. Nero, the driver of the car, was familiar with the area and was aware that inebriates travelled along the roadway. Two street lights near the accident were inoperative. The driver was sober, her car was functioning properly, and her lights were on. She was travelling 25 m.p.h. in a 35 m.p.h. zone. The motorist did not see the pedestrian; she discovered his presence only upon impact. It could not be determined how the pedestrian made his way into the path of the car.
*858 In the instant case, the defendant-motorist struck plaintiff on a two-lane, rural highway near Jonesboro, Louisiana at approximately 2 o'clock a.m. on a dark December night. The pedestrian, a black man, wore dark clothing, with the exception of a red-orange knit cap, and was intoxicated. He was not in a crosswalk. The driver of the vehicle was familiar with the road and had previously travelled down it during his patrol that evening. He was aware that drunks frequently walked along the road from the Ebony Lounge east of the bridge to their homes west of the bridge. A street light near the accident scene was functioning but did not illuminate the area where the collision occurred. The driver was sober, his car was functioning property, and his bright lights were on. He was travelling between 30 and 35 m.p.h. in a 55 m.p.h. zone. The motorist did not see the pedestrian, but discovered his presence only upon hearing the noise of the collision and leaving his car to see what he had hit.
In this factual comparison, three important distinctions should be noted. The first favors the defendant. In this case, the accident clearly occurred in a more rural area than the accident in Aetna v. Nero, as is indicated by the pictures in evidence and the higher 55 m.p.h. speed limit. Also, in the present case, the pedestrian was not fatally injured, and we have the benefit of his testimony. The more problematic distinction is that the trial court here found that the defendant should have seen the pedestrian, whereas the trial court in Aetna v. Nero came to the opposite conclusion. On occasion, the circumstances of a particular case make it difficult to determine whether an issue is legal or factual, as here. However, the central question in the instant case should be resolved within the ambit of the defendant Hicks' duty to see this defendant under the circumstances existing, which is a legal issue, not a factual one as the majority writes.
The majority correctly points out that drivers of automobiles are under a never ceasing duty to maintain a proper lookout and to see what should be seen. Rottman v. Beverly, 183 La. 947, 165 So. 153 (1935). However, Calais v. Thibodeaux, 220 So.2d 209 (La.App. 3d Cir.1969), writ refused, 222 So.2d 67 (La.1969), points out that the rule that a night motorist has a duty to avoid striking objects in the road ahead is subject to the exception that he is not charged with the duty of guarding against striking an unexpected or unusual obstruction which is difficult to see and which he has no reason to anticipate he will encounter on the highway. The jurisprudence does not impose upon a motorist an absolute duty to see and discover all pedestrians in his lane of travel. See Aetna v. Nero, supra; Osby v. Harris, 375 So.2d 181 (La.App.2d Cir.1979); Bink v. Blackwell, 429 So.2d 228 (La.App. 5th Cir.1983). Rather, a motorist must be held to see what they did in fact see and what in legal contemplation they should have seen. This standard does not deviate from the reasonable man standard of traditional tort analysis. See Williams v. State Farm Mutual Automobile Insurance Company, 444 So.2d 1341 (La.App.2d Cir. 1984), writ denied, 448 So.2d 116 (La.1984).
The trial judge stated that Hicks should have seen plaintiff's orange cap. This is not a florescent or hunter's orange cap, but was a very small article on a very dark night. Further, the majority relies heavily upon the fact that the investigating officer testified that he saw Hicks in the roadway when he topped the hill to buttress the idea that Hicks should have seen this plaintiff. However, that officer was looking for the accident scene and while Thissel was not directly in the light of Hicks' lights at that time, those lights were on and certainly directed the officer's attention to the situation.
Based on Aetna v. Nero and the circumstances of this case, I find that the plaintiff failed to establish that the defendant Hicks' duty encompassed the risk of one so situated as plaintiff. It is my view, then, that this motorist on a dark, rural highway at night, who was otherwise proceeding in a careful manner, cannot be held as a matter of law to have seen this pedestrian *859 wearing dark clothing, irrespective of the small orange cap.
Also, as in Finley v. North Assurance Company, et al, I parenthetically have great difficulty with the extent of negligence assessed this motorist, assuming his fault arguendo.
NOTES
[1] One of the judges on the original 3-man panel which heard this case dissented from a determination to reverse the judgment of the district court against Hicks, the Town of Jonesboro and Commercial Union, and, thus, this case was reargued before a panel of five. See LSA-Const. Art. 5, § 9.