523 So.2d 278 (1988)
Lonnie R. TENNIS, et ux, Plaintiffs-Appellees,
v.
HARTFORD INSURANCE COMPANY, Defendant-Appellant.
No. 19455-CA.
Court of Appeal of Louisiana, Second Circuit.
March 30, 1988.
Rehearing Denied April 28, 1988.
*279 Cook, Yancey, King & Galloway by Timothy B. Burnham, Shreveport, for defendant-appellant.
Nelson, Hammons & Johnson by Walter D. White, Shreveport, for plaintiffs-appellees.
Before MARVIN, FRED W. JONES, Jr., and SEXTON, JJ.
MARVIN, Judge.
The liability insurer of a passing motorist appeals a judgment awarding $1,254 property damage to the plaintiff motorist who was being passed. The damage occurred when the passing motorist was confronted with three darkly clad pedestrian children in the passing lane and turned his truck into the plaintiff's car to avoid hitting the children.
Defendant contends that under the circumstances its insured was confronted with a sudden emergency and was not negligent in any respect.
The trial court found the truck driver "clearly negligent in passing ... without being able to see sufficiently down the road." The issue is whether the passing motorist breached any duty owed to the plaintiff.
We affirm.

FACTS
The accident occurred on a rural paved two-lane highway sometime after dark on a clear and dry Sunday night in December. The road was straight, although slightly rising, in the area and passing was permitted.
The posted speed limit was 45 mph according to the occupants of the car. Plaintiff alleged that the truck was traveling 30 mph, but he stated before and during trial that his car was traveling about 40 mph when the truck was passing at a slightly higher or "moderate" speed. The headlights of both vehicles were on. The truck switched to the high or bright beam when it began to pass. The truck driver did not sound his horn. The record is silent as to whether the brakes, lights, and horn of the truck meet the statutory specifications which we shall later discuss.
When the truck was in the passing lane and was "side by side" with the car, the vehicle drivers first noticed the three darkly clad children who were walking in the left lane in the same direction as the vehicles. Neither the children nor the police officer who investigated the accident were called to testify.
The car driver recognized the truck driver's dilemma and steered to his right. The car driver said that the truck had the choice whether to hit the children or swerve right and hit his car. The car driver estimated the children were about 60 feet away when the collision occurred.
The truck driver did not estimate distances but said he was "right up on" the children who were "spread out" in the passing lane and that he had to react instantly to avoid hitting them.

NEGLIGENCE
We emphasize the respective duties the Legislature imposes on the actors in this appeal.
LRS 32:216. Pedestrians on highways
A. Where sidewalks are provided, it shall be unlawful for any pedestrian to walk along and upon an adjacent highway.

*280 B. Where sidewalks are not provided, any pedestrian walking along and upon a highway shall, when practicable, walk only on the left side of the highway or its shoulder, facing traffic which may approach from the opposite direction.

Former § 237 D. contained similar language:
D. Upon approaching a pedestrian upon the traveled portion of any highway, the driver shall sound a warning, and when his view is obstructed, whether upon approaching or entering a highway or curve in a highway he shall slow down and give a timely signal with his horn or other device for signalling. Pedestrians shall walk on their left hand side of the highway as near as possible to the edge thereof, and are prima facie responsible for any consequence of this failure so to do. Pedestrians crossing highways outside the corporate limits of incorporated cities or towns shall yield the right of way to approaching vehicles. (Emphasis added.)
LRS 32:73(1). Passing a vehicle on the left
The following rules shall govern the overtaking and passing of vehicles proceeding in the same direction, subject to those limitations, exceptions, and special rules hereinafter stated:
(1) Except when overtaking and passing on the right is permitted, the driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance, and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle.
LRS 32:351 requires that motor vehicles have a horn "capable of emitting sound audible from a normal distance of not less than 200 feet" and that the "driver shall, when reasonably necessary to insure safe operation, give audible warning with his horn ..."
Additionally, a driver is required to maintain reasonable control of his vehicle (§ 58) and to have headlights that afford him a visibility during the nighttime of persons and vehicles at least a distance of 500 feet ahead at high beam and of 150 feet ahead at low beam (§ 321 (1), (2)). A driver of a private vehicle is required to have brakes which will enable him to stop within 25 feet after applying the brakes while traveling at 20 mph (§ 342 A(3)). We have no evidence as to the quality of the headlights, horn, or brakes of the vehicles.

CAUSE IN FACT
We easily conclude that a substantial cause in fact of the accident was the truck driver's attempt to pass the car. But for the passing maneuver the collision would not have occurred.

SOURCE OF DUTY
Under the statutory provisions, a motorist is legally held to be aware that he will face emergencies in which pedestrians will be found in perilous situations even in the nighttime on rural highways. The primary duty of a motorist is to keep a sharp lookout ahead to discover the presence of those who might be in danger. Finley v. North Assur. Co. of America, 476 So.2d 837 (La.App.2d Cir.1985), writ denied.
The statutory provisions about pedestrians and the requirements that each vehicle be equipped with a horn, with brakes, and with lights that meet certain minimum requirements; that a passing driver will sound his horn when reasonably necessary to insure safe operation, and will not return to his right lane until he can safely clear the overtaken vehicle, strongly suggest that a driver has a duty not to overtake and pass another vehicle, in daytime or nighttime, unless he has the safe distance to safely clear the overtaken vehicle.
A motorist engaged in passing an overtaken car on a two-lane highway must keep a vigilant watch ahead for vehicles and for pedestrians. When it is necessary to insure safe operation, he should signal his approach as a warning. His lights should be on and effective in the dark. He should proceed slowly and cautiously and be prepared to avoid persons or vehicles in the passing lane and, if necessary, to stop *281 his vehicle. The passing driver will be presumed in case of an accident to have seen that which he should have seen. Wilhite v. Beavers, 227 So.2d 919, 924 (La. App.2d Cir.1969).
In this respect, the trial court was correct, factually and legally, in concluding that the truck driver was "clearly negligent in passing ... without being able to see sufficiently down the road."
The plaintiff car driver is clearly among the class of persons the motor vehicle statutes are designed to protect. "Foreseeability [here of "unexpected" pedestrians on the highway] is only a factor and is not always a reliable guide for determining how far and to whom the duty of a defendant extends." Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620, 622 (1972), citing Pierre v. Allstate Insurance Company, 257 La. 471, 242 So.2d 821 (1970).
Careful analysis and not "rules," which sometimes are inconsistent and are loosely applied, is the preferred method for resolving the difficult extent-of-duty question. Robertson, Reason versus Rule in Louisiana Tort Law: Dialogues on Hill v. Lundin & Associates, Inc., 34 La.L.Rev. 1 (1973).
No policy reasons which would excuse the truck driver's conduct or negate application of the duty have been suggested to us or are found by us.
The children did not suddenly dart into the road and confront the truck driver with an emergency. The only evidence is that they were walking "spread out" on the left lane of the highway. Under these circumstances we must conclude that any emergency the truck driver was faced with was caused by his attempt to pass the car when it was unsafe to do so.

SUDDEN EMERGENCY OR INEVITABLE ACCIDENT
The sudden emergency doctrine is sometimes confused with and discussed in terms of the unavoidable or inevitable accident. The inevitable accident is nothing more than a denial of negligence, or a contention that the negligence, if any, was not a "proximate cause" of the injury. See Blashfield, Automobile Law and Practice, Sec. 101.13 (Rev.3d ed. 1979).
The Louisiana Supreme Court in the "green snake" case has quoted Blashfield to further explain this doctrine:
As a corollary of the rule for determining legal responsibility for negligence, if a motorist or other traveler has exercised ordinary care ... and has nevertheless been the occasion of inflicting injury on another, the accident is said to be inevitable, for which no liability attached. Seals v. Morris, 410 So.2d 715 (La.1981, rehearing 1982), quoting Blashfield, supra, Sec. 101.13.
The sudden emergency doctrine, on the other hand, "serves to excuse the otherwise prudent motorist for emergency conduct which, on sufficient reflection, was not the most prudent course of action." Edwards v. Sims, 294 So.2d 611, 613 (La. App. 4th Cir.1974). In Windecker v. Fekete, 221 So.2d 887 (La.App. 2d Cir.1969), this court used this statement in applying the sudden emergency doctrine:
In retrospect, it may be true that by quickly turning [defendant] could have avoided striking [plaintiff], * * * but [defendant] cannot be held to the same cool and deliberate operation of her vehicle as would obtain in a situation where she was not confronted with a sudden emergency... 221 So.2d 887 at 889.
We can agree that the truck driver took the most prudent action in deliberately steering to the right away from the children and into the car when the children suddenly became visible. The truck driver's negligence, however, does not stem from his conduct after he saw the children. His negligence lies in his conduct when he began to pass and before he saw the children.
The fact that the car driver and his passengers did not see the children until about the same time the truck driver did, does not mean that the children were not there and should not have been seen or warned by horn signal that a vehicle from behind them was entering the left lane on which *282 they were walking. Wilhite, supra. The Legislature has expressly declared that a horn signal audible for not less than 200 feet may be necessary for the safe operation of an automobile. § 351, supra. We need not speculate whether the accident would not have occurred if the truck driver had blown his horn before he pulled out to pass the car. We do not know at that time what distance separated him from the pedestrians. We are also not informed of the width of the lanes of the highway or its shoulders.
The truck driver assumed and wrongly concluded that there would be no person or vehicle in the passing lane that would preclude him having the safe distance to complete his maneuver and safely clear the car and that a horn signal was not reasonably necessary for a safe passing maneuver. Pedestrians are directed to walk on the left side of a highway or its shoulder. § 216 B. The authorities we have considered do not allow a passing driver the assumption we have stated. The truck driver is responsible for his wrong conclusion.
We conclude that the Legislature contemplated that a following motorist would not attempt to pass, whether in the daylight or after dark, unless he was able to see that he had the distance, safe from traffic and pedestrians, to safely clear the overtaken vehicle and return to his proper side of the highway. Whether or not the pedestrians were comparatively negligent is not an issue in this appeal.
There are aberrant cases rendered before 1978 such as Calais v. Thibodeaux, 220 So.2d 209 (La.App.3d Cir.1969), writ refused, where a passing motorist was not found negligent for striking a pedestrian who was walking at night in the lane facing oncoming traffic as contemplated by § 216. After Baumgartner v. State Farm Mut. Auto. Ins. Co., 356 So.2d 400 (La. 1978), however, a motorist must expect the unexpected pedestrian on a roadway. See Turner v. New Orleans Public Service Inc., 471 So.2d 709 (La.1985). See Finley v. North Assur. Co. of America, cited supra. See Wilhite v. Beavers, cited supra, before Baumgartner.

DECREE
At appellant's cost, the judgment is AFFIRMED.
SEXTON, J., dissents and assigns reasons.
SEXTON, Judge, dissenting.
The defendant motorist had on his dim lights when he started to pass and did not sound his horn. When he became aware of the children wearing dark clothing in his lane, he chose to hit the plaintiff's vehicle rather than the children. Apparently, when the defendant began his passing maneuver, the plaintiff had his dim lights on because both he and the defendant saw the children at the same timewhen the defendant switched to his bright lights as he drew even with the front of the plaintiff's car. Both the plaintiff and the defendant driver so testified. The plaintiff driver also testified that the defendant was not speeding, even as he was passing. On the basis of this conduct, the defendant is found negligent.
In order to be negligent, one must do something wronghis conduct must be substandard. Surely the defendant as the following motorist is not at fault because he had his dim lights on. Citing LSA-R.S. 32:351, the majority does find his failure to sound his horn to be substandard.[*] However, that article points out that that action is necessary "when reasonably necessary to insure safe operation." How can it be reasonably necessary if the defendant doesn't know that there is an obstruction in the road? Moreover, the clear purpose of the duty to sound one's horn is to warn the vehicle being passed. There is no duty to do so when there is no apparent necessity. Fontenot v. Pepitone, 219 So.2d 245 (La. App. 3rd Cir.1969). The fact that the purpose of the duty is to warn the passing *283 motorist is emphasized by the jurisprudence that provides that if the passing motorist establishes a priority right to the passing lane, he thus preempts it, and the duty to sound the horn no longer applies. Doucet v. Ryder Truck Rental, Inc., 415 So.2d 618 (La.App. 3rd Cir.1982); Hall v. Jackson, 215 So.2d 367 (La.App.2d Cir. 1968). Obviously, this overtaken plaintiff was well aware that the defendant was passing him.
Moreover, I suggest that the majority opinion recognizes that even had the defendant sounded his horn there is a significant chance he would have been faced with the same difficult situation.
In sum, the pedestrians have the duty not to walk on the road, and defendant's duty to sound his horn has nothing to do with the pedestrians. I therefore cannot determine that the defendant was negligent. This opinion continues the unfortunate idea of Finley v. North Assurance Company of America, 476 So.2d 837 (La. App.2d Cir.1985), that a motorist has an absolute duty to discover objects which are in the road. I believe that concept is not only logically unsound but is contradicted by substantial jurisprudence. See generally, Aetna Casualty and Surety Co. v. Nero, 425 So.2d 730 (La.1983), and Thissel v. Commercial Union Insurance Co., 476 So.2d 851 (La.App.2d Cir.1985), Sexton, J. dissenting at 857.
I respectfully dissent.

ON APPLICATION FOR REHEARING
Before HALL, MARVIN, SEXTON, FRED W. JONES, Jr. and NORRIS, JJ.
Rehearing denied.
NOTES
[*] If the pedestrians had been in the plaintiff's lane of travel, the plaintiff would then have been faced with the same choice as the defendant hit the children or hit the other car. Is the defendant negligent in that circumstance?