416 So.2d 562 (1982)
John A. DURRETT
v.
STATE of Louisiana, et al.
John A. DURRETT, Jr., et al.
v.
STATE of Louisiana, et al.
FIREMAN'S FUND INSURANCE COMPANY
v.
STATE of Louisiana, et al.
WRIGHT LEASING COMPANY
v.
STATE of Louisiana, et al.
Nos. 14766-14769.
Court of Appeal of Louisiana, First Circuit.
May 25, 1982.
Rehearing Denied July 13, 1982.
*563 David W. Robinson, Baton Rouge, for John A. Durrett, et al.
Peter T. Dazzio, Baton Rouge, for John A. Durrett, Jr., et al.
Charles Raymond, Asst. Parish Atty., Baton Rouge, for City of Baton Rouge and Parish of East Baton Rouge.
William J. Doran, Jr., Baton Rouge, for State of Louisiana, Dept. of Transp. and Development (Office of Highways).
Robert E. Couhig, Jr., New Orleans, for Lexington Ins. Co.
William C. Kaufman, III, Baton Rouge, for Fireman's Fund Ins. Co.
Before COVINGTON, COLE and WATKINS, JJ.
COLE, Judge.

THE FACTS
At approximately 6:30 p. m. on November 11, 1977, plaintiff John A. Durrett was driving a 1978 Buick Estate Wagon in a westerly direction on Old Hammond Highway (La. 426) in Baton Rouge, Louisiana. Passengers in the car were Durrett's wife, Marjory H. Durrett; his two sons, John A. Durrett, Jr., and Andrew Durrett; his daughter, Marjory Lois Durrett; and his daughter-in-law, *564 Marguerite Durrett.[1] As Mr. Durrett approached the 10200 block of Old Hammond Highway, the right front and right rear tires of his vehicle struck potholes in or near the roadway, causing him to lose control of the vehicle. The car swerved over the center line into the eastbound lane, then swerved to the right, left the roadway and overturned. Lois Durrett, age 20, was killed instantly and the other passengers received injuries of varying degrees of severity. The vehicle was damaged badly.

THE PARTIES
Several suits were filed against the State of Louisiana through the Department of Transportation and Development and against the City of Baton Rouge and the Parish of East Baton Rouge,[2] alleging Old Hammond Highway was part of the state highway system by virtue of La.R.S. 48:191. As a state highway, the State was responsible for maintenance under La.R.S. 48:193(A) and by contract this maintenance had been delegated to the City. The parties alleged the accident was caused by the negligence of the State and City in failing to maintain the streets in a safe condition.
The various suits against these defendants were set forth as follows. John Durrett sued for his own personal injuries and for the wrongful death of his daughter. Johnny Durrett, Marguerite Durrett and Andrew Durrett sued for their personal injuries and Mrs. Marjory Durrett joined them for her personal injuries and for the wrongful death of her daughter. The suit by this group of plaintiffs also contained an alternative demand against Fireman's Fund and Lexington Insurance Company (alleged to be the insurers of the Buick station wagon), arguing if John Durrett was proven negligent these plaintiffs were entitled to recover under the liability insurance policies.
Fireman's Fund sued to recover the $9,231.70 they had paid under their policy for the property damage sustained to the car. Wright Leasing & Company (the owner of the car driven by Durrett) filed suit to recover the $250.00 deductible they had paid in connection with the insurance claim on the damaged car.
The State filed a third party demand against the City in all four suits, alleging the City was bound by contract to indemnify them. Numerous other third party demands were filed by and between the parties, none of which are pertinent to our decision here.

ACTION BY THE TRIAL COURT
After a lengthy trial on the merits the court rendered judgment in favor of all plaintiffs on the main demands and against the State and the City. Judgment was rendered in favor of the Parish of East Baton Rouge, Fireman's Fund and Lexington, dismissing plaintiffs' demands against these defendants. Judgment was further rendered in favor of third party plaintiff, the State, and against the City on the indemnity claim. All other third party demands were dismissed.
Damages awarded the Durrett plaintiffs were as follows:

John A. Durrett
 Wrongful death of daughter - - $ 40,000.00
 Personal injuries - - - - - - - $ 750.00
 Medical Expenses for family - - $ 3,238.82
Marjory Durrett
 Wrongful death of daughter - - $ 40,000.00
 Personal injuries - - - - - - - $ 25,000.00
Johnny Durrett
 Personal injuries - - - - - - - $ 80,000.00
 Loss of earning capacity - - - $100,000.00[3]
 Medical expenses - - - - - - - $ 4,774.88

*565
Marguerite Durrett
 Personal injuries - - - - - - - $ 1,500.00
Andrew Durrett
 Personal injuries - - - - - - $ 500.00

In the cases filed by the Fireman's Fund and by Wright Leasing, judgment was rendered in favor of the plaintiffs for the amount prayed for, i.e., $9,231.70 and $250.00 respectively.

APPEALS TAKEN
The City and the State have filed appeals in all four suits. John Durrett answered the appeal, seeking an increase in the wrongful death award to $100,000. Marjory Durrett also answered the appeal, seeking the same increase for the wrongful death claim and an increase in her own personal injury award to $50,000. Johnny Durrett answered the appeal seeking an increase in his damages to $300,000. A separate answer to the appeal was also filed by all plaintiffs because all had filed third party claims seeking indemnity and contribution from the State and from the City. They answered the appeal because these third party claims were dismissed. In the event the judgments were amended or reversed these parties sought to preserve their claims for indemnity and contribution.

ISSUES PRESENTED
Issues raised by both appellants[4] can be divided into two categories: liability and quantum. As to liability, appellants contend there was no negligence on their part, plaintiffs' recovery from appellants should be barred because of the negligence of John Durrett,[5] and they should not be held strictly liable.
As to quantum, appellants maintain the following awards were excessive in amount or should not have been granted at all: Mrs. Durrett's award for multiple sclerosis aggravation; Johnny's award for future earnings; Marguerite's, Andrew's, and John's awards for personal injuries.
The City raises a third issue which relates to the independent negligence of the State, a matter they contend is not covered under the contract.
By answer, appellees have raised the issue of the sufficiency of the wrongful death awards, Mrs. Durrett's personal injury award, and Johnny Durrett's loss of earning capacity award.

LIABILITY OF THE CITY AND THE STATE
Appellants contend the court erred in finding them liable on the basis of negligence and/or strict liability. They further contend John Durrett was contributorily or primarily negligent.

Negligence of Appellants
Appellants argue plaintiffs failed to prove they hit a pothole and that the pothole caused the accident. The following facts are fully supported. Mr. Durrett was driving at a reasonable rate of speed down Old Hammond Highway; his new car[6] was in good working condition;[7] the right wheels of the car hit something on or near the roadway that caused a severe jolt to the passengers and the car then went out of control. There were numerous potholes and ruts on the roadway extension, ranging in depth from 8 inches to 3 inches and no other obstructions were found in the area. The right rear rim of the tire was damaged in a way consistent with a vehicle hitting a pothole and the right rear tire had been damaged *566 and would not hold air. Aside from having an eyewitness testify he saw the car hit the pothole, this clearly is the best possible evidence one could put forth to show the car in fact hit the pothole. We find it totally immaterial that plaintiffs were not able to identify which pothole they hit. Three potholes of substantial size were identified in the vicinity of the accident and no further identification is necessary.
In answer to appellants' contention that plaintiffs failed to prove the striking of the pothole is what caused the car to go out of control, we can only say this hypothesis is the most probable one advanced by either party. Where a new (nondefective) car driven by a presumably competent driver[8] strikes a pothole and immediately moves out of its own lane of traffic, common sense dictates it was the pothole which caused the car to move in that manner.
Therefore, we agree with the trial court that but for the pothole the accident would not have occurred. Having found the pothole to be a caus in fact of the accident our next inquiry is whether or not the city had a duty to maintain the road in a manner which would eliminate potholes such as the ones in this case.
It has been held repeatedly by courts the public body responsible for maintaining a road is not a guarantor of the safety of the travelers but does owe a duty to keep the highway and its shoulders reasonably safe for non-negligent motorists. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980), rehearing denied 1980. The Sinitiere court laid down the following rule:
"Liability based upon negligence is imposed when the Department is actually or constructively aware of a hazardous condition and fails to take corrective action within a reasonable time."
In the instant case, the City, through its employee, did have knowledge of this dangerous condition. On the same day as the Durrett accident, a Mr. Roy Morgan struck a pothole while traveling west in the same vicinity of Old Hammond Highway. He was able to regain control of his vehicle and avoid an accident but the rim of his right rear tire was damaged and his tire "blewout." Mr. Morgan called the city police to report the accident and Officer Michael Gagliano investigated.
Officer Gagliano testified he knew this part of Old Hammond Highway was in disrepair and after investigating the accident attempted to call Mr. Canfield (the city traffic engineer) to report the hazard. Because November 11th was a holiday, Mr. Canfield could not be reached. Officer Gagliano stated he knew he could have called a 24-hour service number to report the problem to the City, but admitted he forgot to do so. He said he did not attempt to find the exact pothole which the Morgan car struck because there were several in the area.
We conclude the court was correct in imputing the knowledge of Officer Gagliano to the City and agree it was clearly negligent for the City to fail to take immediate action to correct this hazardous situation either by repairing the holes or by putting up some type of a barricade or warning sign.
It was pointed out at trial these potholes had been repaired only two days earlier. Testimony by city maintenance workers established potholes such as the ones in this case were not considered to be on the main roadway and were filled with cold asphalt rather than hot asphalt. It was conceded this type asphalt is of an inferior quality and depending upon the traffic and weather conditions, potholes so filled could require repair in only a few days. This evidence corroborates previous evidence showing the City failed to properly maintain the roadway or the extension.
Having found the defective highway condition to be a cause in fact of the accident, and concluding the City breached its duty to maintain the street (or shoulder) in a reasonably safe condition, our final query is whether or not the failure to properly maintain the road was the "legal or proximate" *567 cause of the accident. Legal cause requires a proximate relation between the actions of the defendant and the harm which occurs and such relation must be substantial in character. Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962), rehearing denied 1962. We find there is a substantial proximate relation between the defendants' failure to correct the defective condition and the harm which fell upon plaintiffs. The danger encountered by the plaintiffs, the loss of control of a vehicle which had hit a pothole, is precisely the type danger one expects from such road conditions and is precisely the reason such conditions must be corrected promptly. Therefore we agree with the trial court's conclusion appellants are liable for their negligence.

Negligence of John Durrett
Appellants make several allegations concerning the negligence of John Durrett so we will address each separately. Appellants contend the court erred in failing to accept the testimony of their expert, Dr. Don Ivey, who concluded Mr. Durrett was driving at a rate of speed from 52 to 64 miles per hour when he struck the pothole.[9] Dr. Ivey stated he believed driver error caused the accident in that Mr. Durrett overreacted when attempting to right his vehicle. The trial court, after considering the evidence offered by both accident reconstruction experts, accepted the testimony of plaintiffs' expert, Dr. Olin Dart. Dr. Dart estimated Mr. Durrett to have been driving 35 to 40 miles per hour at the time the car hit the pothole. After examining the testimony of each expert we cannot say the court abused its great discretion by choosing one expert over the other.
The crux of appellants' argument concerning the negligence of John Durrett is that Mr. Durrett was negligent for leaving the main portion of the road and traveling on the shoulder for no apparent reason. In the first place, we do not necessarily agree the pothole was located on the "shoulder" of the road. Dr. Dart testified he had measured the width of Old Hammond Highway at the scene of the accident and found the eastbound lane to be at least 10 feet wide but the westbound lane to be between 8.2 and 8.7 feet wide. Photographs offered as exhibits showed the part of the road containing the potholes was somewhat of a hybrid between the main road and the shoulder, having some characteristics of each. The area in question, an asphalt extension which varied in width from 1.5 feet to 2 feet, made the westbound lane approximately the same width as the eastbound lane. No one at trial could offer an explanation as to why the center line was placed so that one lane was more narrow than the other. Therefore, we feel certain this asphalt extension was added to widen the westbound lane rather than as a shoulder. Our final conclusion on this issue is Mr. Durrett was not negligent for traveling on the extension because even if this area is technically not a part of the main roadway, the narrow width of the lane made it entirely reasonable that he should be traveling on this portion of the road.
We note, however, appellants' position would not be improved even if we were to consider this area of the road as the shoulder. The jurisprudence states clearly the public entity is responsible for the damage to those who stray inadvertently onto the shoulder and strike ruts or potholes. Sinitiere, supra. Prior jurisprudence had held it was negligent for a motorist to be on the shoulder unless faced with a real emergency. Hopkins v. State, 167 So.2d 441 (La. App. 1st Cir. 1964), writ refused 1964. This doctrine was later relaxed to say such action was negligence unless there was a perceived or apparent danger. Watson v. Morrison, 340 So.2d 588 (La.App. 1st Cir. 1976), writ refused 1977. In Rue v. State Department of Highways, 372 So.2d 1197 (La. 1979), rehearing denied 1979, the Supreme Court overruled Hopkins and stated although it may be substandard conduct for a plaintiff to stray inadvertently onto the shoulder this action will not bar recovery because a motorist has the right to assume *568 the shoulder will be maintained in a condition safe for travel. In Sinitiere, supra, the motorist inadvertently steered his car onto the shoulder of the road but the court concluded that absent some actual or constructive knowledge of the defects on the shoulder, this action would not "per se constitute negligence."
In light of this jurisprudence we find no merit in appellants' argument that Mr. Durrett should be barred from recovery simply because he drove onto the "shoulder." See Ishee v. State, 413 So.2d 1362 (La.App. 1st Cir.1982).
Finally, appellants conclude Mr. Durrett was negligent for failing to steer properly back onto the main road. Subject to our reservations about the pothole being on the shoulder of the road at all, we find no evidence showing he was negligent in this respect. Unlike the driver in the Sinitiere case, and in others[10] cited by appellants, Mr. Durrett was not presented with a situation where he left the roadway, traveled along the shoulder, and then lost control of the car while maneuvering back onto the highway. In all of these cases it was found the plaintiff had acted negligently in his method of re-entering the highway. The facts of this case are entirely different because after hitting the pothole Mr. Durrett's car was knocked immediately out of control. He had no opportunity to "re-enter the main portion of the highway" because the car went amuck upon impact. Therefore, it is inappropriate to speak of his "negligence upon re-entry."
Appellants contend Mr. Durrett's negligence is proven by the fact Mr. Morgan hit the same or a similar pothole earlier in the day and managed to maintain control of his car. This fact hardly classifies as evidence in a legal sense. Because one person is able to avoid injury when confronted with a dangerous condition by no means implies the next person is negligent if he fails to do the same. Innumerable factors contribute to the final result in each case such as lighting conditions; speed of the vehicle; weight of the vehicle; condition; size and type of the tires; differences in steering responsiveness; variations in shock absorbers; the angle the car impacted the pothole and so on. We find no merit to this argument.

Strict Liability
Because we have found the City to be negligent we need not discuss the issue of strict liability at any length but we address it simply because it is raised by appellants as an error. We are satisfied plaintiffs have shown the defective thing (the highway) was in the custody of appellants and that the damage was caused by the defective thing. Loescher v. Parr, 324 So.2d 441 (La.1975), rehearing denied 1976. Once these elements are proved the custodian can escape liability only by showing the harm was caused by the fault of the victim, by the fault of a third person, or by an irresistible force. None of these defenses were proven, therefore strict liability attaches.

QUANTUM
Appellants and appellees contend the court erred as to quantum in the following respects.

Award to Mrs. Marjory Durrett
The trial court acknowledged Mrs. Durrett's main injury was a "flare-up" of her multiple sclerosis (MS) and then awarded her $25,000 for "all her injuries." Appellants allege no award should have been made because Mrs. Durrett failed to prove the flare-up was caused by the accident. In addition to the MS, Mrs. Durrett complained of contusions and lacerations to her left hand which hurt her for "a long time." She stated at trial she had been diagnosed as having MS in 1965, some twelve years before the accident, but had been in remission since approximately 1974. Her symptoms worsened two or three months after the accident and were quite aggravated for two years. She testified that as of the date of the trial (November 1980) she was once *569 again in remission and was able to do all the things she could do before the accident.
Her treating physician, Dr. Gordon McHardy, testified by deposition he believed the aggravated symptoms were accident related and caused by the extreme physical and emotional stress she endured during and after the accident. When he treated her after the accident he found her symptoms to have worsened to the extent she needed a cane to walk.
Although Dr. McHardy believed the flare-up to be accident related he also stated it was entirely normal for an MS patient to have flare-ups and in fact it was unusual for a patient to go more than 12 months without such a recurrence. Appellants offered no evidence to contradict Dr. McHardy's conclusions.
We agree with the trial court Dr. McHardy's uncontroverted testimony established Mrs. Durrett's worsened condition was more probably than not caused by the accident, but we find an abuse of discretion in the amount awarded. We note at the time of trial Mrs. Durrett admitted she had recovered completely from the flare-up so any award must be limited to the two-year period in which her symptoms were aggravated. Under the guidelines of Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), rehearing denied 1977, as a reviewing court we can only lower the award to the highest figure the trial court could have granted without abusing its discretion. Based on the evidence in the record we feel this amount is $15,000 and we amend the judgment accordingly.

Award to Johnny Durrett For Loss of Earning Capacity
After trial was concluded the court reopened the case for arguments concerning an award for loss of earning capacity for Johnny Durrett. The original award of $80,000 was for the loss of an eye. The court reconsidered the matter and rendered judgment for $100,000 for the loss of earning potential. Appellants contend there was no evidence to support this award and appellee Johnny Durrett contends the amount should be raised to $300,000.
Testimony by Johnny showed before the trial he had some visual impairment but was generally able to get around on his own. He was an athlete in high school and graduated from L. S. U. without any major visual help. Although his eye doctor informed him he was "legally blind"[11] before the accident, he was employed by the State Department of Education doing financial requisitions. This job required a good bit of reading and he was able to perform the work without difficulty.
During the course of the accident his right eye was struck by a mail box, causing severe injury. The eye was removed several weeks after the accident. Various complications developed in his left eye and he testified that as a result of the accident he was not really able to read at all now. He has difficulty getting around by himself unless he is in a familiar place and described everything as being a "blur" now. In order to accommodate his very limited visual capacity, the Department of Education transferred Johnny to a position that required little or no reading, that of interviewing personnel. Now, as before, he is an unclassified civil service employee and his job is subject to the whims of the administration. He makes more money in his new position than he did in his old.
Dr. Randal Caffarel, an ophthalmologist, testified he treated Johnny in the emergency room the night of the accident. The right eye was seriously injured and after several weeks the left eye became increasingly infected. On December 21st the right eye was removed in an attempt to arrest the infection in the left eye. (The left eye had developed "sympathetic uveitis which is a reaction of a fairly health eye to an eye that is in a diseased state.) Medical records show that when last tested in 1972 Johnny's vision was 20/200 in the left eye and 20/400 *570 in the right eye. His history indicated he had severe chorioretinitis which began at a very early age. After the accident the vision in his remaining eye was 20/800. Dr. Caffarel said his condition could worsen and it was possible he could completely lose his eyesight. At the very best the condition will remain at the status quo.
We find no merit to appellants' contention there was no evidence Johnny would suffer a loss in earning potential. It was clearly established that before the accident he had a visual impairment but was basically able to function as a "seeing person" both in his work and in his ability to get around. After the accident his vision was much worse; he is now limited to jobs that require no reading or use of the eyes whatsoever. Clearly one suffers a loss of earning potential when one is relegated to the quite limited occupational field of jobs which do not require any visual capacity.
Johnny Durrett admits he is earning presently more than he was before the accident and appellants contend this counters his claim he has suffered a loss of earning potential. The Supreme Court discussed this issue in Folse v. Fakouri, 371 So.2d 1120 (La.1979) as follows:
"What plaintiff earned before and after the injury does not constitute the measure. Even if he had been unemployed at the time of the injury he is entitled to an award for impairment or diminution of earning power. And while his earning capacity at the time of the injury is relevant, it is not necessarily determinative of his future ability to earn. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). Damages should be estimated on the injured person's ability to earn money, rather than what he actually earned before the injury."
* * * * * *
"Earning capacity in itself is not necessarily determined by actual loss; damages may be assessed for the deprivation of what the injured plaintiff could have earned despite the fact that he may never have seen fit to take advantage of that capacity. The theory is that the injury done him has deprived him of a capacity he would have been entitled to enjoy even though he never profited from it monetarily."
We find no abuse of discretion in the trial court's award of $100,000 for the loss of future earnings, therefore, we decline to alter the amount of the award in either direction.

Wrongful Death Award
The trial court awarded each parent $40,000 for the wrongful death of their 20 year old daughter, Lois. The Durretts contend this amount is too low. We agree and therefore raise the quantum to $60,000 for each parent.
As we have said repeatedly, the trial court has a great deal of discretion in determining the amount of an award for any given injury and unless there is an abuse of discretion we will not disturb this award. According to the principles enunciated in Reck v. Stevens, 373 So.2d 498 (La.1979), the court of appeal must give an articulated analysis of the facts and if after such analysis an abuse of discretion is disclosed, the award may be adjusted to an appropriate amount.
Considering all the facts of this case, we conclude the award of $40,000 per parent for the loss of this 20 year old daughter is an abuse of discretion. Mrs. Durrett testified the family was very close and that Lois, her only daughter, lived on the L. S. U. campus during the week but came home on weekends to be with the family. At the time of this fatal accident she was accompanying her family to a high school football game to watch her younger brother, Steven, play football. Because of Mr. Durrett's emotional state, attorneys at trial did not question him as to his relationship with his daughter but instead stipulated there was the normal abundance of love and affection between them.
Again, Coco, supra, mandates we raise the award only to the lowest amount the trial court could have granted without abusing its discretion. While there is no magic formula for arriving at this figure *571 we feel the record reflects the sum of $60,000 for each parent is the lowest amount the court could have given. Therefore, we amend the judgment to reflect this increase in quantum.

Awards to Marguerite Durrett, Andrew Durrett and John Durrett for their Personal Injuries
Appellants argue there was no evidence to justify the awards to these plaintiffs for their personal injuries. Marguerite Durrett testified she cut her head and bruised and cut her fingers. She said both injuries hurt her for several weeks. Hospital records indicated she had been treated for these injuries in the emergency room on the night of the accident. We find no abuse of discretion and will not disturb the award.
Andrew Durrett did not testify but his father stated Andrew suffered a blow to the right flank and the hospital records corroborated this. We find no abuse in the court's award of $500 for this injury.
John Durrett did not testify directly as to his various injuries, allegedly because of his emotional state at the time of trial. However, while discussing another matter he mentioned he "took a hell of a blow on the head in the car." Although the award of $750 may seem generous based on this minimal amount of evidence, we do not find it to be an abuse and therefore will not disturb the award.

STATE'S LIABILITY UNDER THE CONTRACT
The City admits the contract dictates they are responsible for maintenance of Old Hammond Highway and must indemnify the State for all negligence attributed to the failure to properly maintain. They allege, however, the State was responsible for the center line striping and was negligent for placing the stripes off-center. Therefore, they argue the State is responsible for this independent negligence.
While we concede the off-center striping may have been a cause in fact of the accident (but for the lane being so narrow Mr. Durrett may not have had to drive onto the extension), we do not find it to be the proximate cause of the accident. As discussed previously, the proximate cause of the accident was the defective condition of the road, i.e., the potholes. Such condition is a matter of maintenance which under the terms of the contract is the responsibility of the City. Therefore, we reject the City's argument that the State's independent negligence caused the accident.

CONCLUSION
For the foregoing reasons, we amend the judgment in favor of plaintiff, John A. Durrett, Sr., by increasing the amount from $43,988.82 to the sum of $63,988.82; we amend the judgment in favor of plaintiff, Marjory H. Durrett, by increasing the amount from $65,000.00 to the net sum of $75,000.00; and, in all other respects the judgments appealed are affirmed.
Costs are to be paid by appellant, City of Baton Rouge, as permitted by law.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] Because the similarity of names of family members could cause confusion, we will refer to John Durrett, Sr. as John; to John Durrett, Jr. as Johnny; to Mrs. Durrett as Marjory; and to Marjory Lois as Lois.
[2] Hereinafter referred to as the State and the City, respectively.
[3] The original award was for $80,000. After trial the matter was reargued and the court stated the $80,000 should be considered compensation for the pain, suffering and disfigurement and granted an additional $100,000 for loss of earning capacity.
[4] Although many parties have appealed we will refer to the City and the State as the appellants and to the other parties as the appellees.
[5] The City contends John Durrett was contributorily negligent while the State contends his negligence was the proximate cause of the accident. Although we need not reach this issue we note the City's approach would not necessarily bar recovery by the other plaintiffs if the City and John Durrett were both found to be negligent.
[6] The car had only 200 miles on it.
[7] Dr. Gerald Whitehouse, professor of mechanical engineering, testified he had examined the vehicle after the accident and concluded the car was free of any discernible defects.
[8] There was no evidence offered to show that Mr. Durrett was incapacitated in any way.
[9] The posted speed limit was 45 miles per hour.
[10] Knotts v. State, Dept. of Highways, 395 So.2d 419 (La.App. 3d Cir. 1981), writ denied 1981; Godwin v. Government Employees Insurance Co., 394 So.2d 751 (La.App. 3d Cir. 1981).
[11] This term was defined by Dr. Caffarel as describing a person whose best corrective vision in either eye is 20/200 or less.