553 So.2d 919 (1989)
Stuart A. SMITH
v.
Julius ZIMMER, et al.
No. 89-CA-0222.
Court of Appeal of Louisiana, Fourth Circuit.
November 16, 1989.
Brian J. Waid, Bubrig, Scandurro & Waid, Buras, for plaintiff-appellant Stuart A. Smith.
Gregory J. Lannes, Jr., Chalmette, for defendant-appellee La. Dept. of Transp. and Development.
Before GARRISON, KLEES and BECKER, JJ.
KLEES, Judge.
Plaintiff appeals the district court's judgment in favor of the Louisiana Department of Transportation and Development (DOTD). We affirm, but for reasons other than those given by the trial court.
This case arose from a collision between two motorcycles and a car at the intersection of St. Claude Avenue and Forestall Street in New Orleans. The accident occurred on September 25, 1982. Plaintiff, a passenger on one of the motorcycles traveling eastbound on St. Claude, was injured *920 when that motorcycle was hit by a car which was traveling on Forestall attempting to cross St. Claude.
Plaintiff sued Julius Zimmer, the driver of the car; Mr. Zimmer's insurer, State Farm; the City of New Orleans; and Transyt Corporation, the manufacturer of the traffic signal which controlled the intersection. Plaintiff later amended his petition to add as a defendant DOTD, asserting that DOTD had custody of the traffic signal because the accident occurred on a state highway. In its answer, DOTD third-partied the city of New Orleans, alleging that the city was solely responsible for the operation and maintenance of the signal.
All parties with the exception of DOTD settled out-of-court with plaintiff for various amounts. On January 14, 1988, trial proceeded before a Commissioner of the district court against DOTD alone. At trial, plaintiff attempted to prove that the accident was caused by a malfunction of the traffic signal, for which DOTD is strictly liable as custodian under La. Civil Code art. 2317. Following trial, the Commissioner recommended that there be judgment in favor of DOTD because plaintiff failed to prove that DOTD had legal custody of the traffic signal. The Commissioner found that the City of New Orleans had assumed responsibility for the maintenance of this signal and all others on state highways within the city by means of a contract with the state of Louisiana that was in full force and effect at that time of the accident. On May 26, 1988, the district court accepted the findings of the Commissioner and rendered judgment dismissing plaintiff's claim against DOTD. Plaintiff now appeals.
We do not agree with the lower court's finding that DOTD is not the custodian of the traffic light under Civil Code article 2317, providing that persons are responsible for damage caused by things in their custody. La.R.S. 48:193(A) states that the board of highways (DOTD) "shall control" all signal lights on highways within the state system. This accident occurred on a state highway. Section D of R.S. 48:193 authorizes the board of highways to contract with a municipality in order to carry out the board's responsibilities with regard to state highways located within the municipality. At trial, DOTD introduced into evidence a contract between it and the city of New Orleans whereby the city undertook responsibility for all maintenance and operation of traffic signals on state highways within the city limits. This contract was in effect on the date of the accident. Based on this contract, DOTD argued, and the trial court found, that the city was the party legally responsible under article 2317 for any malfunction of the signal.
This conclusion does not comport with the law. In Hardy v. State, Dept. of Highways, 404 So.2d 981, 986 (La.App. 3d Cir. 1981) writ denied, 407 So.2d 741 (La. 1981) a case involving a collision at the intersection of two state highways within the city of Nachitoches, the court unequivocably held: "Custody of signal lights was in the State and no contract with the City of Nachitoches could relieve the State of control and custody as contemplated by LSA-c.c. art. 2317." Similarly, in Guillotte v. Dept. of Transportation & Development, 503 So.2d 618, 621 (La.App. 4th Cir.1987), this court stated: "As to the plaintiff, the State has a non-delegable duty to maintain the highways in a safe condition. That duty cannot be contracted away."
Several courts have held that although the state cannot escape its 2317 liability to the plaintiff by means of a contract, if the particular problem is covered by a maintenance contract with a city or parish, the city or parish may be liable to indemnify the state. See Robertson v. Handy, 354 So.2d 626 (La.App. 1st Cir.1977), writ denied, 356 So.2d 434 (La. 1978); Garrison v. State, Dept. of Highways, 401 So.2d 528 (La.App. 2d Cir. 1981). In addition, one court has found both the state and city to have 2317 custody of a state road where the city was negligent in failing to fix a known pothole. Durrett v. State, 416 So.2d 562, 568 (La.App. 1st Cir.1982), writ denied, 421 So.2d 247 (La. 1982). We have found no cases, however, in which the state has been completely exonerated from primary liability to the plaintiff on the grounds that some party other than the state had custody of a state highway.
*921 Our review of the law compels us to conclude that DOTD cannot completely escape strict liability for the traffic signal by contracting out the operation and maintenance of the signal to the city of New Orleans. Although indemnity would clearly apply here if we were to find that a defect in the signal caused the accident, indemnity is not an issue because the city has settled and is no longer a party to the case. Therefore, the lower court's finding that DOTD did not have custody of the signal is clearly wrong.[1] In spite of this conclusion, we do not find the plaintiff entitled to recover against DOTD. For DOTD to be liable under article 2317, the plaintiff must prove not only that DOTD had legal custody of the signal, but also that the signal was defective and that this defect was a legal cause of the accident. Based on the record, we find that the plaintiff failed to prove that the traffic signal malfunctioned or that its malfunction contributed to the accident.
Immediately following the accident, all drivers maintained that they had a green light. At trial, plaintiff attempted to show that the amber signal for the eastbound lanes of St. Claude, in which the motorcycles were traveling, was too short. Plaintiff's theory of recovery against DOTD was that if the amber signal had been timed correctly, the motorcycles would have cleared the intersection before the automobile entered it, thus preventing the collision.
Mr. Zimmer, driver of the automobile, testified that right after the accident, he drove around and timed the amber signal for the westbound lanes of St. Claude at 2½ to 4 seconds. He did not time the signal for the eastbound lanes. Mr. George, an insurance investigator, testified that on September 30, 1982, about a week after the accident, he observed that the St. Claude signal changed directly from green to red with no amber light. Mr. Gautreaux, a traffic engineer for the city, testified that the amber light should have been four seconds long. Finally, Mr. Rigol, an expert in accident reconstruction, gave his opinion that if the amber light had been at least three seconds long, the accident would have been prevented.
Defendant countered this testimony with that of Officer Griffin, the policeman who investigated the accident, who stated that he observed all the lights to be functioning normally and reported them as such, although he did not actually time them. Defendant also introduced records of the city of New Orleans showing that there had been no complaints about the traffic signal malfunctioning or any adjustments made for a month following the accident. Finally, Mr. Edwards, an eyewitness to the accident who was following the motorcycles, stated that at the time of impact, the signal for eastbound St. Claude was still amber.
Considering all the evidence, we conclude that plaintiff failed to prove that the malfunction of the traffic signal caused the accident. The condition of the signal a week after the accident is of no probative value. Mr. Zimmer's timing of the westbound signal, between 2½ and 4 seconds, was within the range of what Mr. Gautreaux stated was the correct interval4 seconds. Moreover, the timing of the westbound signal is irrelevant in the absence of evidence showing that the eastbound signal was the same. Most importantly, however, plaintiff's case was undermined by the testimony of Mr. Edwards, the eyewitness to the accident who stated that the St. Claude light was still amber at the time of the impact. This testimony from an uninterested observer completely refutes plaintiff's theory that if the amber signal had been longer, the accident would not have occurred.
Considering all the evidence, we find that plaintiff failed to show that a malfunction *922 of the traffic signal contributed to the accident. Therefore, DOTD is not liable.
Accordingly, for the reasons stated, we affirm the judgment of the district court dismissing plaintiff's suit at his costs.
AFFIRMED.
NOTES
[1] The Commissioner also found that the ownership of the signal was unclear because it was a new signal purchased with federal funds and installed by a contractor hired by the city; the state did not formally accept the project until several weeks after the accident. DOTD maintains that it cannot be liable for the signal because it did not yet own it. However, it is not ownership which triggers 2317 liability; it is "custody". Custody of state highways and signals on those highways is given to the state by R.S. 48:193.