LINDSAY, Judge.
The plaintiff, Maple Slider, filed suit against the defendant, John Paul Meyer, (incorrectly named as “Myers” in the original petition) for the wrongful death of her twenty-three year old retarded son, Melvin Slider. The trial court ruled in favor of the *1113 plaintiff, awarding her $30,000 in general damages, plus vfuneral expenses of $2,659.70. However, the trial court found the decedent to be seventy percent at fault in causing the accident which resulted in his death and reduced the damage award accordingly. Both the plaintiff and the defendant appealed. We amend, and, as amended, affirm the trial court judgment.
FACTS
On March 19, 1987, between 7:00 and 8:30 p.m., the defendant, John Paul Meyer, was traveling southbound on Louisiana Highway 169. The decedent, Melvin Slider, walked across the road, west to east. While in the highway, he was struck by Meyer’s automobile. The decedent was propelled 140 feet through the air and fell to the roadway. He sustained severe head and neck injuries, resulting in his death. At the time of the accident, the decedent was wearing blue jeans and a light colored shirt.
The defendant stated that he had been driving around in his vehicle all day looking for auto parts to repair a truck which he owned. He consumed a seven ounce container of beer in the afternoon. The defendant claimed that in the early evening he stopped at a friend’s house, which was near his own home. The friend was not at home, so the defendant entered Highway 169 from a side road and began the short trip home. According to the defendant, he had just turned onto the highway from the side road and was traveling at approximately thirty-five miles per hour when he saw a brown “blur” pass in front of his vehicle, which he thought was a large dog.
The defendant said he felt a slight impact. He claimed he then backed up to see what he had hit, but found nothing and then left the scene. The defendant did not get out of his vehicle in order to look for what he had hit, nor to inspect his vehicle for damage.
The decedent’s body was found a short time later. Sheriff’s investigators also found fragments of a vehicle headlight and scattered fragments from the front of an automobile. These fragments were traced to the defendant’s car. Paint from the defendant’s car was found on the decedent’s pants and threads from the decedent’s clothing were later found under the defendant’s vehicle.
An autopsy revealed that at the time of impact, the decedent was standing upright and was struck from the left side. He sustained internal injuries and multiple fractures to both legs. The cause of death was determined to be severe head and neck injuries which occurred when the decedent impacted with the roadway after being struck by the defendant’s vehicle. The decedent, who was slightly retarded, was also found to have a blood alcohol content of .10 percent.
At trial it was brought out that the decedent had a habit of walking along the roads in the area near his home.
The decedent’s mother, who, according to the trial court, also appeared to be retarded, testified that the decedent was living with her at the time of his death, and that they had a good relationship. She also testified that the decedent helped around the house and gave her a portion of the government check which he received each month.
At trial, the plaintiff attempted to show that the defendant pled guilty to misdemeanor criminal charges of hit and run driving which arose out of this accident. The plaintiff also attempted to introduce into evidence the defendant’s 1980 misdemeanor conviction for driving while intoxicated. The trial court ruled that under Louisiana Code of Evidence Article 609, evidence of the defendant’s misdemeanor convictions was not admissible.
In its reasons for judgment, the trial court found the decedent should not have placed himself in a position of peril and was thus seventy percent at fault in causing the accident. The court found the defendant to be thirty percent at fault, reasoning that the defendant had a duty to see what he should have seen and there was no showing that the decedent suddenly darted into the roadway from behind an obstacle which would have prevented the defendant from *1114 seeing him. The court found that the plaintiff was entitled to $30,000 in general damages, plus $2,659.70 for funeral expenses. These awards were reduced by the decedent’s seventy percent fault.
The plaintiff appealed, alleging that the trial court erred in refusing to allow the introduction of the defendant’s convictions. The plaintiff also argues that the trial court erred in assessing the decedent with seventy percent fault. Although admitting the decedent was partially at fault, the plaintiff argues the decedent’s degree of fault was less than seventy percent.
The plaintiff finally argues that the trial court award of $30,000 in general damages was excessively low. The plaintiff cites numerous cases dealing with general damage awards for wrongful death to parents of young adults and contends that an appropriate award in this case would be in the neighborhood of $60,000.
The defendant also appealed the trial court decision. The defendant asserts that under the facts of this case, the decedent was 100 percent at fault in causing the accident. Therefore, the defendant contends that he should not be found liable for any damages.
PRIOR CONVICTIONS
At trial, the plaintiff attempted to show that in connection with this accident, the defendant had entered a plea of guilty to the misdemeanor criminal charge of hit and run driving, a violation of LSA-R.S. 14:100. The plaintiff also sought to impeach the credibility of the defendant by showing that he had previously been convicted of driving while intoxicated, an offense which was not connected to the present accident.
The trial court ruled that the newly enacted Louisiana Code of Evidence precluded the introduction of evidence of these convictions.[1] The plaintiff argues on appeal that the trial court erred in excluding this evidence.

Prior DWI Conviction

In an attempt to impeach the credibility of the defendant, the plaintiff sought to introduce evidence that the defendant had a prior misdemeanor conviction for driving while intoxicated. The trial court's refusal to allow such evidence was proper under LSA-C.E. Art. 609, which provides, in pertinent part:
A. For the purpose of attacking the credibility of a witness in civil cases, no evidence of the details of the crime of which he was convicted is admissible. However, evidence of the name of the crime of which he was convicted and the date of the conviction is admissible if the crime: (1) was punishable by death or imprisonment in excess of six months under the law in which he was convicted and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party; or (2) involved dishonesty or false statement, regardless of the punishment.
A misdemeanor conviction of driving while intoxicated is not “punishable by death or imprisonment in excess of six months,” nor does it involve “dishonesty or false statement.” Therefore, the trial court was correct in refusing to allow evidence of this conviction.

Guilty Plea to Hit and Run Driving

The plaintiff also sought to introduce evidence that the defendant, in connection with this accident, entered a plea of guilty to hit and run driving. The evidence was first offered for impeachment. Following argument of counsel, the trial court again properly concluded that such evidence was not admissible under LSA-C.E. Art. 609, for the same reasons the prior DWI conviction was not admissible.
There was also some discussion in the trial court as to whether the guilty plea to hit and run driving was admissible as an admission against interest. However, plaintiff's counsel never pursued that issue. Now, in oral argument before this *1115 court, plaintiff contends that the plea of guilty to hit and run driving was an admission by the defendant of a high degree of fault on his part.
Had the conviction been properly presented as an admission against interest, then under LSA-C.E. Art. 801(D)(2), the guilty plea might have been admissible. See and compare Hinshaw v. Keith, 645 F.Supp. 180 (D.Me.1986). The guilty plea could have been used to show that the defendant was actually driving the vehicle, had that been a contested issue. However, at trial, in testimony and in the pleadings, it was basically admitted that the defendant was the driver of the vehicle at the time this accident occurred.
The plea may have also been relevant on the issue of fault, if the plaintiff had shown that the defendant pled guilty to having “caused” the accident.[2] In this case, however, the guilty plea was not properly tendered as an admission against interest. Even if the plea had been properly offered as an admission against interest and tended to establish fault, nevertheless, that admission, standing alone, would not have been sufficient to quantify the degree or percentage of fault to be assessed against the defendant.
In this ease, it was not necessary to use the guilty plea to establish fault. There was ample evidence admitted at trial which supports the trial court finding that the defendant was partially at fault in causing this accident. We find no error in the trial court ruling refusing to admit into evidence the defendant’s guilty plea to hit and run driving.
FAULT
The trial court found that the decedent was seventy percent at fault in causing the accident resulting in. his death and that the defendant was thirty percent at fault. Both the plaintiff and the defendant have appealed the trial court apportionment of fault.
The plaintiff argues that even though the decedent was partially at fault in causing the accident, the defendant’s fault greatly outweighs that of the decedent. The plaintiff argues that the defendant was aware that pedestrians, including the decedent, often walked the rural roads in the area. The plaintiff contends that the defendant failed to keep a proper lookout and was negligent in leaving the scene of the accident. On the other hand, the defendant contends that the decedent was totally at fault in causing the accident by walking in the middle of a rural road at night while in an intoxicated condition.
We find that the trial court was not manifestly erroneous in its apportionment of fault. At one time in Louisiana, before the advent of comparative fault, pedestrian-motorist cases were governed by the rule in Baumgartner v. State Farm Mutual Auto Insurance Company, 356 So.2d 400 (La.1978), which held that the contributory negligence of a pedestrian would not defeat his recovery against a motorist who was also negligent. However, in Turner v. New Orleans Public Service, Inc., 476 So.2d 800 (La.1985), the Louisiana Supreme Court found that, with the advent of comparative fault, the exception created in Baumgartner was no longer needed and “the legislative plan to proportion recovery according to fault is a superior solution....”
In numerous pedestrian-motorist accidents in recent years, the duty-risk analysis has been utilized to solve the issue of responsibility when there is more than one cause in fact of damages. The proportionate percentage of fault allocated between a pedestrian and a motorist should be based upon considerations of the respective degree of duty of the pedestrian and the motorist and the degree of causation involved in each party’s breach of that duty. Finley v. North Assurance Company of *1116 America, 476 So.2d 837 (La.App. 2d Cir.1985).
Findings of percentages of fault are factual and will not be disturbed on appeal unless shown to be clearly wrong. Linton v. City of Baton Rouge, 517 So.2d 199 (La.App. 1st Cir.1987); Varnado v. Continental Insurance Company, 446 So.2d 1343 (La.App. 1st Cir.1984).

Duty of the Pedestrian

A pedestrian has a duty to keep a lookout for approaching traffic. Thissel v. Commercial Union Insurance Company, 476 So.2d 851 (La.App. 2d Cir.1985), writ denied 479 So.2d 361, 366 (La.1985). The facts of the present case support the trial court finding that the decedent, Melvin Slider, was seventy percent at fault in causing this accident. Slider was walking along a rural road at night. He had a blood alcohol content of .10 percent. Slider was also shown to be somewhat mentally retarded. The physical evidence shows that, at the time Slider was struck, he was crossing the roadway, from west to east. For no apparent reason, other than his own negligence, he walked in front of the defendant’s vehicle.
Based upon these facts, it is clear that the decedent’s actions were largely responsible for this accident and his subsequent loss of life.

Motorist’s Duty

Drivers of automobiles are under a never ceasing duty to maintain a proper lookout and to see what should be seen. Thissel v. Commercial Union, supra; Finley v. North Assurance Company of America, supra.
A motorist is legally held to be aware that he will face emergencies in which pedestrians will be found in perilous situations even in the nighttime on rural roadways. Tennis v. Hartford Insurance Company, 523 So.2d 278 (La.App. 2d Cir. 1988).
The general rule is that at night, a motorist has the duty to avoid striking objects in the road ahead. However, this rule is subject to the exception that he is not charged with the duty of guarding against striking an unexpected or unusual obstruction which is difficult to see and which he had no reason to anticipate he would encounter on the highway. Calais v. Thibodeaux, 220 So.2d 209 (La.App. 3rd Cir.1969), writ denied 254 La. 15, 222 So.2d 67 (1969).
The facts in the present case support the trial court finding that the defendant motorist was thirty percent at fault in causing this accident.
The defendant was traveling at night with his headlights on. He claimed to have been traveling at approximately thirty-five miles per hour.
Although pedestrians sometimes walked along this highway, there was no reason for the defendant to expect the decedent to appear in his traffic lane. However, there was no showing that the weather was rainy or foggy or acted to obstruct the defendant’s view of the roadway. The decedent was wearing a light colored shirt at the time of the accident.
The defendant claimed he felt a “slight impact,” but did not know what he had hit. After realizing that he had struck something in the roadway, the defendant failed to get out of his vehicle in order to look for the object or to inspect the damage to his vehicle.
In light of the evidence presented in this case, we conclude that the trial court acted well within its discretion in assessing the defendant’s fault at thirty percent in causing this accident.
QUANTUM
The plaintiff claims the trial court erred in the amount of the general damage award. The trial court awarded the plaintiff |30,000 in general damages for wrongful death of her twenty-three-year-old, slightly retarded son.
The elements of damages for wrongful death are loss of love and affection, loss of services, loss of support, medical expenses and funeral expenses. Pierre v. Lallie Kemp Charity Hospital, 515 So.2d 614 *1117 (La.App. 1st Cir.1987), writ denied 515 So.2d 1111 (La.1987).
The trial court has great discretion in determining the amount of an award for any given injury and unless there is an abuse of discretion, the award will not be disturbed on appeal. Durrett v. State, 416 So.2d 562 (La.App. 1st Cir.1982), writs denied 421 So.2d 247, 248, 251 (La.1982).
The reviewing court must look first, not to prior awards, but to the individual circumstances of the case. Reck v. Stevens, 373 So.2d 498 (La.1979). Prior awards may serve as an aid in determining excessiveness only where, on an articulated basis, the present award is shown to be greatly disproportionate to past awards for truly similar injuries. Reck v. Stevens, supra; Siemann v. Teston, 517 So.2d 242 (La.App. 1st Cir.1987).
The appellate function in reviewing quantum is limited to raising inadequate awards to the lowest amount the trial court could have reasonably awarded and lowering excessive awards to the highest amount the trial court could have reasonably awarded. Norris v. Pool Well Service, Inc., 460 So.2d 1117 (La.App. 2d Cir.1984).
In the present case, the plaintiff testified that her son lived at home with her, as he had his entire life, and helped her with work around the house. The plaintiff testified that her son occasionally worked at odd jobs around the community. He also drew a government cheek and regularly gave the plaintiff a portion of his income to aid in her support.
Based upon these facts, we find that the trial court award of $30,000 for general damages for the loss of this young, retarded person was excessively low. Therefore, we must raise the award only to the lowest amount the trial court could have reasonably awarded. We believe the lowest amount that could reasonably be awarded for general damages under the circumstances of this case is $60,000.
Although the defendant cites several cases in which lower awards were made, more recent cases have awarded from $60,-000 to $150,000 in general damages to parents of young adults for the wrongful death of their children.
Durrett v. State, 416 So.2d 562 (La.App. 1st Cir.1982), awarded $60,000 to each parent of a twenty-year-old daughter killed in an auto accident.
Johnson v. Georgia Casualty and Surety Company, 488 So.2d 1306 (La.App. 3rd Cir.1986), writs denied 493 So.2d 1223, 1224 (La.1986), awarded $145,000 to each parent of a nineteen-year-old adopted son killed at work when struck by a large vehicle.
Johnson v. Folse, 438 So.2d 1137 (La.App. 1st Cir.1983), upheld an award of $145,000 to the widowed mother of a twenty-year-old daughter killed in an auto accident.
Lang v. Prince, 447 So.2d 1112 (La.App. 1st Cir.1984), upheld an award of $150,000 to the mother of a minor son killed in an automobile accident.
Based upon all the circumstances of this case, and in light of recent jurisprudence, we raise the general damage award to the plaintiff to $60,000, reduced by the decedent’s seventy percent fault.
CONCLUSION
' For the reasons stated above, we affirm that portion of the trial court judgment apportioning fault at seventy percent to the decedent and thirty percent to the defendant. We also affirm of the trial court’s award of $2,659.70 for funeral expenses, reduced by the decedent’s seventy percent fault.
We amend the general damage award to the plaintiff, raising that award to $60,000, reduced by the decedent’s seventy percent fault. Accordingly, we recast the trial court judgment as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiff, MAPLE SLIDER, and against the defendant, JOHN PAUL MEYER, IN THE SUM OF $62,-659.70 representing general damages of $60,000.00 and special damages of $2,659.70 with legal interest thereon from date of judicial demand, December 30, 1987, until paid, and for all costs of *1118 the proceedings, in this court and in the court below, subject to a reduction based on Melvin Slider’s allocation of fault of 70%.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the expert witness fee of Dr. George McCormick be and the same is hereby set at $150.00 and same is taxed as court costs herein.
AMENDED IN PART AND AS AMENDED, AFFIRMED AND RENDERED.
SEXTON, J., concurs.
ON APPLICATION FOR REHEARING
Before SEXTON, LINDSAY, HIGHTOWER, HALL and NORRIS, JJ.
Rehearing denied.

. The Louisiana Code of Evidence became effective January 1, 1989. The present case was tried in April, 1989. Therefore, the Code of Evidence applies to this case.

. LSA-R.S.-14:100 defines hit and run driving as the intentional failure of the driver of a vehicle involved in or causing any accident to stop his vehicle at the scene of the accident, to give his identity, and to render reasonable aid. [emphasis supplied] In the present case, the record only shows (through an offer of proof) that the defendant pled guilty to the offense of hit and run driving. No particulars of the plea are found in this record.