MOORE, J.
Kenneth Smith appeals a judgment that rejected his claim for personal injuries arising from an incident in which Smith, as a pedestrian, had his right hand struck by a passing motorist. We affirm.
FACTUAL BACKGROUND
Shortly before 3:00 AM on May 29, 2016, Smith was walking south on La. Hwy. 594 (also called Millhaven Road), a two-lane asphalt highway east of the city limits of Monroe, Louisiana. The road has no paved shoulder, only a few inches of asphalt beyond the fog line. Smith was walking on the left side of the road, by his admission, sometimes in the lane of traffic, sometimes straddling the fog line, and sometimes stepping into the grass. He had drunk, by his account, four 12-oz. beers earlier that evening. Although it was the middle of the night, he was dressed entirely in black - hat, shirt, pants and shoes - and was shown in cellphone video as a dark-complected African American. There was little artificial lighting in the area, only a ground-mounted floodlight beaming onto the sign for La. State Police Troop F, located on the east side of La. 594 and somewhat north of where the accident occurred.
Terrance Ervin, an off-duty corporal in the Monroe Police Dept., was driving an unmarked Ford Explorer north on La. 594, returning home from a security detail at the Monroe Civic Center that evening. He testified that he was not tired, was going 40-45 mph, and was using his low beams. When he neared Troop F, however, he suddenly saw a "blur" on the east side of his lane. He testified that the "pavement just came alive" some 15-20 feet ahead of him, and he heard an impact about ½ to 1 second later. He testified that he thought he might have struck a deer, so he drove up to Troop F, turned around, came back and pulled alongside Smith, who was still standing off the side of the road.
Ervin's passenger side mirror had struck Smith's right hand. The glass in the mirror was broken but the mount was still intact. Smith testified that he was not sure exactly where he was standing when his hand was hit, but the right side of his body was "on the side of the northbound lane." Ervin testified that the "blur" he saw was "in the road, inside the fog line," and he steered left to avoid hitting it, but could not. Ervin called State Police and, while he was waiting, took a cellphone video of Smith, transferred to a CD and admitted *1220 at trial as Exhibit P-3 (a still from the video was also admitted, as Ex. P-5). According to Ervin, Smith had "slurrness" in his speech and difficulty punching numbers on his own cellphone.
State Trooper Matthew Meek arrived at the scene at 3:05 AM. He described Smith as "almost incoherent," "very intoxicated" and "with a strong odor of alcohol." He wrote Smith a ticket for "pedestrian violation," La. R.S. 32:316. In the accident report, he diagrammed Smith standing directly on the fog line and Ervin swerving slightly to the left before contact. He ascribed the accident to (1) pedestrian actions and (2) pedestrian condition, and wrote that Ervin was neither distracted nor impaired. Aside from the broken glass in the mirror, Trooper Meek found no physical evidence of the accident. He testified that he spoke to Smith in the ambulance, but Smith testified that the trooper never interviewed him, and just gave him a ticket.
Smith was taken to the St. Francis Medical Center ER in Monroe, where he was treated for an arm contusion, pain and minor bleeding; he received 4 mg of morphine. The date of the accident, May 29, was the Sunday before Memorial Day, so Smith did not have to work on Sunday or Monday. The following day, Tuesday, he returned to his job as a contract laborer for the City of Monroe, Department of Public Works; he never missed a day of work. Nearly two months post-accident, he went to Dr. J.D. Patterson for physical therapy that lasted about three months. His medical expenses totaled $ 6,058.32.
PROCEDURAL HISTORY AND TRIAL
Smith filed this suit against Ervin and his employer, the City of Monroe, in May 2017. The City conceded that Ervin was in the course and scope of his employment when the accident occurred.
The case went to trial in April 2018. The three witnesses (Smith, Ervin and Trooper Meek) testified as outlined above. The following details are also salient to the appeal.
Smith related that, in May 2016, he was living with his brother on Eisenhower Street, half a mile or so northeast of the site of the accident; he had spent Saturday afternoon sitting on the front porch, drinking four 12-oz. beers; later that night he needed some cigarettes, so he set out on foot for the EZ-Mart, some three miles down La. 594. He testified that he did not go to the much closer Tiger Mart, because it closed at 10 PM; also, because he did not own a car, he thought nothing of taking this three-mile walk. He admitted he was walking sometimes on and sometimes off the highway, but he "got over" when he saw the Explorer coming. He insisted that he was not drunk when this happened, and that the trooper did not interview him at the scene. On direct examination, he said he had cut his left hand with a chainsaw at work sometime before this accident; on cross, however, he admitted that the chainsaw accident did not happen until August 6, over two months after .
The St. Francis medical records, admitted as Ex. P-1, include a neurological assessment by a Nurse Anderson, taken at 3:57 AM (about one hour post-accident), which lists the patient's speech as "clear, coherent," his orientation as "oriented × 4" and his affect as "calm, cooperative."
Trooper Meek testified that despite being nearly incoherent, Smith told him he was walking to EZ-Mart when the accident happened. Trooper Meek also opined that under R.S. 32:216, a pedestrian must walk on the side of the road, not in the opposing lane , and if there is no sidewalk, he must walk in the grass.
*1221 Ervin testified that he was not distracted in any way, and never went off the paved roadway. He admitted that in his initial statement to the trooper, and in a handwritten account, he did not mention that he might have "hit a deer." He said, on cross-examination, that low beams shine about 200 feet ahead, but plaintiff's counsel corrected him (in fact, they shine only 150 feet); still, Ervin did not agree with counsel's suggestion that had he been using high beams (which shine 500 feet, as counsel stated), he would have seen Smith much sooner and had time to avoid the impact. Finally, he pointed out that in the cellphone video, Ex. P-3, he aimed the camera down at Smith's black leather shoes, clearly showing that they were clean, and not damp and dewy, as might be expected had he been walking in the grass.
ACTION OF THE DISTRICT COURT
The court took the matter under advisement and rendered oral reasons for judgment in September 2018. The court found that the preponderance of the evidence was that Smith "was not walking on the grassy narrow shoulder of the road," but, instead, "just inside the fog line in the edge of the lane of travel" when he encountered the Explorer. Further, Smith admitted seeing the approaching vehicle but took no evasive action, and this was likely because he was intoxicated, even though the evidence of his level of intoxication was conflicting. Even if Smith was not intoxicated or if he was walking legally along the edge of the road - which the court doubted, given that his shoes appeared clean in the video - Smith was still the sole cause of the accident, being dressed so dark in the middle of the night. The court therefore concluded that Smith was solely at fault for the accident.
After judgment was rendered dismissing all claims, Smith appealed devolutively. He raises two assignments of error.
DISCUSSION
By his first assignment of error, Smith urges the court committed manifest error in placing 100% of fault on the plaintiff, when the evidence, taken most favorably to the defense, establishes that one cause of the accident was the driver being distracted and failing to see a pedestrian 150 feet ahead of him and walking toward him. Smith contends that because there was no sidewalk, he was proceeding legally and nonnegligently on the left side of the road or its shoulder, under La. R.S. 32:216 B; and Ervin breached the duty of ordinary care imposed on a motorist to avoid colliding with any pedestrian upon the roadway, La. R.S. 32:214 ; Hanna v. Roussel , 35,346 (La. App. 2 Cir. 12/5/01), 803 So.2d 261 ; Jackson v. Scott Truck & Tractor Inc. , 31,933 (La. App. 2 Cir. 5/5/99), 736 So.2d 987. Smith argues that Ervin's own testimony establishes that he was not attentive to what was ahead of him; had he seen the pedestrian 150 feet ahead, when he was doing 45 mph, he would have had 3 to 4 seconds to take evasive action, but did not see him until he was 20 feet away. Smith suggests that this degree of inattention should make Ervin completely at fault, or at least 30% at fault, as was found in the auto-pedestrian case of Finley v. North Assur. Co. of Amer. , 476 So.2d 837 (La. App. 2 Cir. 1985).
Smith further contends that even though courts often accept law enforcement officers' testimony over civilians', there was no reasonable basis to accept Ervin's testimony, as it was internally inconsistent and contradicted by documentary evidence: (1) if Ervin really did not see Smith until 20 feet away, then he could not have discerned that Smith was walking inside the fog line; (2) the visibility was not as poor as Ervin described, as the floodlight shining *1222 on the Troop F sign plainly created "backlighting"; (3) even though Ervin and Trooper Meek said Smith was very intoxicated, the video does not show a seriously drunk person, and the St. Francis neurological assessment refutes it; (4) the video shows that the grass was trimmed very short along this stretch of road, so no conclusion should be drawn from the fact that his shoes were dry. Smith concludes that this court should reverse and render judgment finding Ervin and his employer, the City of Monroe, wholly or partially at fault.
Where sidewalks are not provided, "any pedestrian walking along and upon a highway shall, when practicable, walk only on the left side of the highway or its shoulder, facing traffic which may approach from the opposite direction." La. R.S. 32:216 B. The purpose of this statute is to protect pedestrians from cars. Moore v. Oak Meadows Apts. , 43,620 (La. App. 2 Cir. 10/22/08), 997 So.2d 594. A pedestrian has a duty to keep a proper lookout for approaching traffic. Slider v. Myers , 557 So.2d 1111 (La. App. 2 Cir. 1990) ; Thissel v. Commercial Union Ins. Co. , 476 So.2d 851 (La. App. 2 Cir.), writs denied , 479 So.2d 361, 366 (1985).
In addition, "every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway[.]" La. R.S. 32:214. Drivers are charged with the duty to see what an ordinarily prudent driver should have seen and avoid striking pedestrians in the road. Foster v. Clarendon Nat'l Ins. , 32,646 (La. App. 2 Cir. 3/1/00), 753 So.2d 968 ; Bell v. USAA , 30,172 (La. App. 2 Cir. 1/21/98), 707 So.2d 102, writs denied , 98-0712 (La. 5/8/98), 718 So.2d 433, 98-0766 (La. 5/8/98), 718 So.2d 434. Liability is not imposed on a driver simply because his vehicle collides with a pedestrian; the plaintiff must prove negligence on the part of the driver. Simms v. Progressive Ins. Co. , 38,804 (La. App. 2 Cir. 9/29/04), 883 So.2d 473, writ denied , 2004-2871 (La. 1/28/05), 893 So.2d 78 ; Foster v. Clarendon Nat'l Ins. , supra . A night driver is not charged with the duty of guarding against unusual or unexpected obstructions which he could not anticipate and which are, under the circumstances, difficult to discover. Davis v. Smith , 35,117 (La. App. 2 Cir. 10/2/01), 796 So.2d 765, writ denied , 2001-2887 (La. 1/25/02), 807 So.2d 250 ; Jackson v. Scott Truck & Tractor , supra .
The district court's findings of fact are subject to the manifest error standard of review: the court of appeal may not set aside those findings unless they are manifestly erroneous or plainly wrong. Broussard v. State , 2012-1238 (La. 4/5/13), 113 So.3d 175 ; Rosell v. ESCO , 549 So.2d 840 (La. 1989). The appellate court must decide only whether the fact finder's conclusion was reasonable, not whether it was right or wrong. Broussard v. State , supra ; Stobart v. State , 617 So.2d 880 (La. 1993). In order to reverse a factual finding for manifest error, the appellate court must find that the record, viewed in its entirety, (1) contains no reasonable factual basis for the district court's finding and (2) establishes that the finding is clearly wrong. Broussard v. State , supra ; Stobart v. State , supra . When such findings are based on determinations regarding the credibility of witnesses, those findings can virtually never be manifestly erroneous. Hayes Fund for First United Methodist Church of Welsh v. Kerr-McGee Rocky Mountain LLC , 2014-2592 (La. 12/8/15), 193 So.3d 1110 ; Succession of Houston , 52,181 (La. App. 2 Cir. 8/15/18), 253 So.3d 836.
We have closely reviewed the record. Smith admitted that he had been walking along the edge of Hwy. 594, weaving between the pavement, the fog line and *1223 the grassy shoulder; crucially, he was not sure precisely where he was standing when the Explorer struck his hand. On this ambiguous evidence, the district court did not abuse its discretion in finding that Smith was either standing on, or too close to, the highway. The court was not plainly wrong to find him at fault.
In addition, the witnesses agreed that Smith was dressed entirely in black, on a poorly lit stretch of road, and this fact is confirmed by the cellphone video. The court committed no manifest error in finding that this contributed to the accident.
The evidence is more disputed as to Smith's level of impairment: he admitted drinking four beers since the afternoon; Ervin and Trooper Meek testified that he was very intoxicated; and the St. Francis neurological assessment, taken about one hour later, described him as clear, coherent, oriented and cooperative. The video does not show severe intoxication, but it supports the district court's finding that he was impaired enough to fail to stand aside when he saw the Explorer coming in his direction. The court was not plainly wrong to find that Smith's impairment contributed to the accident.
By contrast, Ervin testified that despite having just worked a security detail at the Civic Center, he was not tired, a fact confirmed by Trooper Meek. Ervin also testified that he never left the paved portion of the road; no testimony or physical evidence, and nothing in the police report, contradicts this. As noted, the mere fact that a driver strikes a pedestrian does not create liability. Simms v. Progressive Ins. Co. , supra ; Foster v. Clarendon Nat'l Ins. , supra . The fact that Ervin did not immediately tell Trooper Meek about possibly hitting a deer does not, in our view, cast any doubt on his account of his actions. The significant fact is that the accident happened quickly; Ervin's estimates of time and distance cannot have been studied and precise. The court did not abuse its discretion in accepting Ervin's version of the accident.
Counsel's argument that had Ervin been using his high beams he could have seen the pedestrian sooner and taken some evasive action is tenable but does not show manifest error. In general, a driver must use "a distribution of light or composite beam, directed high enough and of sufficient intensity to reveal persons and vehicles at a safe distance in advance of the vehicle[.]" La. R.S. 32:322 A. However, the driver is held to a standard of ordinary care, and is not required to guard against unusual or unexpected obstructions which are difficult to discover. Davis v. Smith , supra ; Jackson v. Scott Truck & Tractor , supra . Given the poor lighting in the area and Smith's exceptionally dark attire, the district court was not plainly wrong to find that he presented an unusual or unexpected obstruction.
Finally, Smith urges that even if he was negligent, he was not the sole cause of the accident; under the scheme of comparative fault, La. C.C. art. 2323, the driver could still be cast with some of the fault, like the 30% fixed by this court in Finley v. North Assur. Co. of Amer. , supra . Our analysis in Finley was heavily premised on the rationale of Baumgartner v. State Farm Mut. Auto. Ins. Co. , 356 So.2d 400 (La. 1978), which held that whenever a driver strikes a pedestrian on a city crosswalk, the driver must be deemed wholly at fault, and the pedestrian, no matter how impaired, must be deemed free of fault.
The factual distinction between the well-lighted and fully developed suburban intersection in Baumgartner , and the minimally lighted and mostly undeveloped stretch of Hwy. 594 in the present case, should be obvious. More importantly, we now recognize that Baumgartner is an artifact of the *1224 system of contributory negligence, in which courts may have indulged in legal fictions to avoid the harsh result of denying recovery to claimants who were only slightly negligent. Notably, Baumgartner predated the enactment of Art. 2323 (1979 La. Acts, No. 431, § 1, effective August 1, 1980), and was expressly overruled by Art. 2323. Turner v. New Orleans Pub. Serv. Inc. , 476 So.2d 800 (La. 1985). This court's opinions since Finley have affirmed that dark-clad, or otherwise concealed, pedestrians may indeed be 100% at fault if struck by a vehicle. Foster v. Clarendon Nat'l Ins. Co. , supra ; Burks v. McKean , 559 So.2d 921 (La. App. 2 Cir.), writ denied , 566 So.2d 398 (1990) ; Myles v. Turner , 24,198 (La. App. 2 Cir. 1/19/94), 632 So.2d 384. On the instant record, we find no manifest error in the district court's decision to assess all fault to the plaintiff. Smith's first assignment of error lacks merit.
By his second assignment of error, Smith urges the district court erred in failing to award damages, and argues that this court should fix damages by de novo review. In light of our resolution of the first assignment of error, we pretermit any discussion of damages.
DECREE
For the reasons expressed, the judgment is affirmed. All costs are to be paid by the plaintiff, Kenneth Smith.
AFFIRMED .